534 A.2d 153

Rod J. Maras, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs October 8, 1987, to Judges MacPhail and Palladino, and Senior Judge Barbieri, sitting as a panel of three.

*Bruce A. Barrett, Barrett & Dratler,* for petitioner.

*James S. Marshall,* Assistant Counsel, for respondent.

Opinion by Judge Palladino, December 2, 1987:

Rod J. Maras (Petitioner) appeals a decision of the Department of Public Welfare (DPW) that he was not entitled to any additional salary or a 2% bonus provided by the collective bargaining agreement between the Commonwealth and the Service Employees International Union (SEIU) during the six months he worked in a temporary position.

Petitioner was an employee of DPW at Polk Center when he sustained severe head injuries in an automobile accident in April, 1977 while on work related business. He received workmen's compensation benefits until he returned to his position as a Psychological Service Associate II (PSA II) in January, 1978. In June, 1981, Petitioner again suffered a work related head injury, inflicted by one of the patients at Polk, which exacerbated the damage suffered in the first accident. He received workmen's compensation benefits until he returned to work in January, 1982. On September 1, 1983, Petitioner suffered a recurrence of the problems which had resulted from his head injuries and could not continue to perform his job and applied for disability leave. Petitioner's salary was $938.25 biweekly on September 1, 1983. When his disability recurred, he was placed on Act 534[1] benefits and received $765 biweekly, the amount of his salary when he was injured by the patient in 1981.

Petitioner, desirous of returning to work, requested a transfer to a comparable job at another DPW facility. An alternative work site arrangement agreement was reached on June 14, 1984, which provided Petitioner with temporary employment as an Income Maintenance Work (IMW) Trainee at the Crawford County Assistance Office (CAO). If Petitioner successfully completed

---

[1] Act of December 8, 1959, P.L. 718, *as amended*, 61 P.S. §§951-952. Section 1 of Act 534, in pertinent part, provides that any DPW employee:

who is injured during the course of his employment by an act of any . . . person confined in [a state mental hospital] . . . shall be paid by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return as an employe of such . . . institution at a salary equal to that earned by him at the time of his injury. . . .

61 P.S. §951.

a training program and work trial period and an IMW position was available, he would receive an appointment to an IMW I position. Petitioner began this temporary job on June 18, 1984. On December 14, 1984, Petitioner was terminated from this position because he was not able to satisfactorily perform the job functions during the work trial period. While working at the CAO, Petitioner was paid $765 biweekly, the amount he received at the time he was injured by the patient in June, 1981, and was maintained as an employee on the Polk Center records. The salary for the job he was performing (IMW Trainee) was $664.50 biweekly.

In April, 1985, Petitioner, through his attorney, sought additional compensation from DPW. He contended that under the terms of the alternative work site arrangement agreement and the collective bargaining agreement between the Commonwealth and SEIU he was entitled to additional compensation. The amount sought for a period from June 18, 1984 to July 1, 1984 was the difference between the $765 he received biweekly and the $954 biweekly salary paid to those in PSA II positions. He also sought the difference between the $982.50 biweekly amount paid PSA II positions for the period from July 1, 1984 to December 14, 1984 and the $765. Additionally, he sought the 2% bonus the collective bargaining agreement provided to be paid to those in "active" pay status on January 1, 1985 or to those in "inactive" pay status who return to "active" status by July 1, 1985 and have 18 months "active" service since July 1, 1983.

DPW's Office of Personnel Services denied Petitioner's request. He appealed this decision. After a hearing, the hearing officer issued a recommendation in which he concluded Petitioner was not entitled to the salary increases because Act 534 limited benefits to the amount of salary being received at the time of the disa-

bling injury. He also determined that Petitioner was not entitled to the 2% bonus under the collective bargaining agreement because he was on inactive status on January 1, 1985 and did not have 18 months of active service during the period beginning July 1, 1983. DPW's Office of Hearings and Appeals adopted the hearing officer's recommendation and denied Petitioner's appeal. Reconsideration was sought and preliminarily granted but then denied by the DPW's Executive Deputy Secretary.[2]

On appeal to this court, Petitioner continues to assert his entitlement (1) to compensation at the rate being received by those in a PSA II position during the six months he worked at the CAO and (2) to the 2% bonus provided for in the collective bargaining agreement.

## SALARY

Petitioner makes two arguments in support of his contention that he should have been paid a salary equal to that being received by DPW employees in a PSA II position during the six months he worked as an IMW Trainee at the CAO. First, he refers to paragraph 4 of the alternate work site arrangement agreement which states that: "During this period of temporary duty at the alternate work site, and prior to an appointment, should such occur, I will be entitled to the same benefits as all other DPW employees who are on work status."

---

[2] We consider DPW's "preliminary" grant of reconsideration to be a grant of reconsideration and its subsequent denial of reconsideration as an affirmance of its original decision on the merits. Accordingly, our scope of review is to determine whether necessary findings of fact are supported by substantial evidence, an error of law was made or Petitioner's constitutional rights were violated. 2 Pa. C. S. §704.

Petitioner's reliance on paragraph 4 is misplaced. The salary to be received by Petitioner while working at the CAO was covered by paragraph 3 of the agreement. That paragraph stated that Petitioner would receive during his temporary assignment the amount of salary he had been receiving at the time of his *first* work related injury in 1977 ($516.75 biweekly). This was changed to $765 biweekly when it was determined that Petitioner's current disability was due to his second work-related injury.

The other argument advanced by Petitioner is that because he was being paid under the terms of Act 534 while in his position as a PSA II, he was entitled to the general pay increases provided for in the collective bargaining agreement. In *Lightcap v. Department of Public Welfare*, 107 Pa. Commonwealth Ct. 98, 527 A.2d 1087 (1987), this court addressed the issue of whether individuals receiving Act 534 benefits had a right to receive contractual increases in salary which they would have been entitled to if not injured. The court noted that the words of Act 534 were clear and "made no provision for affording contractual increases to a disabled employee." *Id.* at 104, 527 A.2d at 1090. The court held that it was not error for DPW to limit the salary paid to employees receiving Act 534 benefits to the salary received at the time of the disabling injury. *Id.*

While this case differs factually from *Lightcap* in that Petitioner is seeking contractual salary increases for a period of time in which he was working,[3] we believe the rationale of *Lightcap* is applicable. Section 1 of Act 534 provides that an employee who qualifies for Act 534

---

[3] In *Lightcap,* the employee sought the difference between her salary at the time of her injury and the amount she would have received in contractual raises if she had been working during the 582 days she was completely absent from employment and entitled to Act 534 benefits.

benefits shall receive his full salary until his disability "no longer prevents his return as an employe of [DPW] . . . at a salary equal to that earned by him at the time of his injury." Petitioner, because of his disability, returned to a temporary job which paid considerably less than what he had been earning at the time of his injury. He was therefore entitled under Act 534 to receive as compensation the amount he had been receiving at the time of the injury which resulted in his disability but no more than that. Act 534 sets the salary to be received by those individuals who qualify for benefits pursuant to it and it does not provide for the inclusion of contractual salary increases. *Lightcap*.

## BONUS

Petitioner asserts that DPW's determination that he was on "inactive" pay status when receiving Act 534 benefits and therefore not entitled to a 2% bonus in the collective bargaining agreement is not supported by substantial evidence.

Article 21, sections 6 and 8 of the collective bargaining agreement provide for a one time bonus in the amount of 2% of the employe's annual income to be paid to employees in active pay status on January 1, 1985 or employees in inactive pay status on January 1, 1985 if they return to active pay status by July 1, 1985 and have accumulated 18 months of active status since July 1, 1983. DPW considers employees receiving Act 534 benefits to be in an inactive pay status.

Act 534 provides for the payment of a salary but does not address the pay status of an employee receiving Act 534 benefits. The collective bargaining agreement does not define the terms "active" and "inactive" pay status. Nor does it contain any provision defining the pay status of Act 534 employees.

Petitioner contends that the absence of any indication in the collective bargaining agreement as to the pay status of individuals receiving Act 534 benefits renders DPW's determination that he was in an inactive pay status unsupported by substantial evidence. He asserts that since he was being paid by the Commonwealth, we should determine that he was in an active pay status and entitled to the bonus.

However, neither DPW nor this court has jurisdiction to make this determination. Section 903 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.903 requires that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory." *See Wilson Area Education Association v. Wilson Area School District,* 90 Pa. Commonwealth Ct. 151, 494 A.2d 506 (1985). The record does not contain the portion of the collective bargaining agreement dealing with the grievance arbitration procedure. However, we note that whether Petitioner's claim that he should be considered on active pay status and entitled to the 2% bonus falls within the scope of the grievance arbitration procedure is an issue which must be determined by an arbitrator. *Wilson.*

While it was improper for DPW to address the issue of Petitioner's entitlement to the bonus, DPW's affirmance of its original decision on this issue can be sustained by this court because of the lack of jurisdiction.[4]

Accordingly, we affirm.

---

[4] A correct decision will be sustained, even if the rationale for the decision was erroneous, as long as there is a rationale apparent from the record to support it. *See Gregorious v. Workmen's Compensation Appeal Board (European Health Spas),* 87 Pa. Commonwealth Ct. 86, 486 A.2d 564 (1985).

ORDER

AND NOW, December 2, 1987, the decision of the Department of Public Welfare in the above-captioned matter is affirmed.