v.

DEPARTMENT OF PUBLIC
WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 9, 2011.

Decided Feb. 1, 2012.

Allen J. Koslovsky, Waynesburg, for petitioner.

Anthony S. Dedola, Jr., Uniontown, for intervenor Fayette County Children and Youth Services.

BEFORE: PELLEGRINI, Judge,[1] and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

B.K. petitions for review of the February 3, 2011, order of the Western Regional Manager (Manager) of the Bureau of Hearings and Appeals (Bureau) of the Department of Public Welfare (DPW). The Manager's order adopted in its entirety the Recommendation of a DPW administrative law judge (ALJ) that an appeal filed by B.K. under the provisions of the Child Protective Services Law (Law)[2] be denied and that the indicated report[3] of

---

**1.** This case was assigned to the opinion writer before January 7, 2012, when Judge Pellegrini became President Judge.

**2.** 23 Pa.C.S. §§ 6301—6385.

**3.** Section 6303(a) of the Law defines "indicated report" as follows:

[A] child abuse report made pursuant to this chapter if an investigation by the county agency or [DPW] determines that substantial evidence of the alleged abuse exists based on any of the following:

(1) Available medical evidence.

child abuse [4] naming her as a perpetrator [5] should not be expunged from the Child-Line Registry. We affirm.

R.D.C. is a male child born on February 27, 2008, to B.K., his natural mother, and R.C., his natural father. B.K. and R.C. are husband and wife.

On August 5, 2009, when R.D.C. was 17 months old, he was taken to the Uniontown Hospital emergency room and treated for exposure to cocaine. Anthony Zinobile, M.D., examined R.D.C. at the hospital, and a drug screen of his urine tested positive for the presence of cocaine. R.D.C. was transferred to Children's Hospital in Pittsburgh where he was examined by Janet Squires, M.D., and admitted as a patient. R.C. contacted Fayette County Children and Youth Services (CYS) and an investigation into the incident ensued.

On October 2, 2009, CYS filed an "indicated" Investigative Report (CY 48) which was entered on the ChildLine Registry.[6] The CY 48 alleged that B.K. had inflicted physical injuries on R.D.C. due to his exposure to cocaine. On November 4, 2009, B.K. appealed CYS's decision to file the indicated report and requested expunction of her name from the ChildLine Registry.[7]

The ALJ conducted two hearings. Dr. Zinobile, Dr. Squires, and Davine Michelle

---

(2) The child protective service investigation.

(3) An admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303(a). *See also* section 3490.4 of DPW's regulations, 55 Pa.Code § 3490.4.

**4.** Section 6303(b)(1) of the Law defines "child abuse," in pertinent part, as "[a]ny recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age." 23 Pa.C.S. § 6303(b)(1)(i). In turn, section 6303(a) defines "nonaccidental" as an injury that is the result of an intentional act that is committed with disregard of a substantial and unjustifiable risk." 23 Pa.C.S. § 6303(a). Finally, section 6303(a) of the Law defines "serious physical injury," in pertinent part, as "[a]n injury that ... [s]ignificantly impairs a child's physical functioning, either temporarily or permanently." *Id. See also* section 3490.4 of DPW's regulations, 55 Pa.Code § 3490.4.

**5.** In pertinent part, section 6303(a) of the Law defines "perpetrator" as "[a] person who has committed child abuse and is a parent of a child...." 23 Pa.C.S. § 6303(a).

**6.** Section 6331 of the Law states, in pertinent part:

There shall be established in the department:

\* \* \*

(2) A Statewide central register of child abuse which shall consist of founded and indicated reports.

(3) A file of unfounded reports awaiting expunction.

23 Pa.C.S. § 6331(2), (3).

**7.** Section 6341 of the Law states, in pertinent part:

**(a) General rule.**—At any time:

\* \* \*

(2) Any person named as a perpetrator ... in an indicated report of child abuse may, within 45 days of being notified of the status of the report, request the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter.

\* \* \*

**(c) Review of refusal of request.**—If the secretary refuses the request under subsection (a)(2) ... the perpetrator ... shall have the right to a hearing before the secretary or a designated agent of the secretary to determine whether the summary of the indicated report in the [central register] should be amended or expunged on the grounds that it is inaccurate or that it is being maintained in a manner inconsistent with this chapter ...

23 Pa.C.S. § 6341(a)(2), (c).

Arnold, a Greene County Children and Youth Services caseworker, testified by telephone; Robert Madison, CYS's investigating caseworker, B.K. and R.C. testified in person.

R.C. testified that he knew his wife had a drug problem. (N.T. 9/14/10[8] at 101.) He stated that his son and his wife had been missing for three days when he came home from work on August 5, 2009, and found out they were staying with a girlfriend in Nemacolin, Greene County. (*Id.*) R.C. said that he went to the girlfriend's house and found his son. (*Id.* at 102.) It appeared that his son had not been bathed in three days. (*Id.*)

According to R.C., B.K. first told him that she had their son in a crack house and then told him she had their son in a car while she was smoking crack cocaine. (*Id.* at 105, 107.) R.C. testified that B.K. acknowledged that R.D.C. was with her when she was using cocaine. (*Id.* at 107.) He added that B.K. told him that she had a drug problem and wanted help. (*Id.* at 107.) R.C. stated that he took his son from the girlfriend's house to Uniontown Hospital. (*Id.* at 108.)

Dr. Zinobile testified that he treated R.D.C. at the Uniontown Hospital emergency room. (N.T. 5/24/10[9] at 10.) A drug screen of R.D.C.'s urine revealed the presence of cocaine. (*Id.* at 13, 17.) Dr. Zinobile determined that R.D.C. should be admitted for cardiac monitoring, but there were no monitors available so R.D.C. was transferred to Children's Hospital. (*Id.* at 18, 19.) Dr. Zinobile stated that the effects of cocaine on a child of this age could be death, stroke, bleeding into the brain and permanent disability. (*Id.* at 22–23.)

Dr. Squires testified that she treated R.D.C. at Children's Hospital and that the urine screen revealed the presence of cocaine and its metabolites. (N.T. 5/24/10 at 33, 35, 36.) She stated that a child of this age could have cocaine in his system by either ingestion or inhalation, but that there was no medical reason for cocaine to be in his system. (*Id.* at 36, 37.) Dr. Squires also testified that its presence affects the brain and the way the child acts. (*Id.*) She opined that the change in R.D.C.'s neurological status reflected in the medical records indicated a significant impairment, even if only temporary, due to his exposure to cocaine. (*Id.* at 42–43, 44–45.)

Arnold testified that she had an ongoing case with B.K. with Greene County Children and Youth Services in regards to one or more of her children. (N.T. 5/24/10 at 49, 50.) Arnold testified that she spoke with B.K. on August 5, 2009, and asked B.K. where she had been during the preceding two or three days. (*Id.* at 52.) According to Arnold, B.K. stated that she had been with a friend at the friend's house with R.D.C. for that time period and had been out of contact because her cell phone was broken. (*Id.* at 52–54.)

Madison testified that he conducted the CYS investigation into the incident involving R.D.C. (N.T. 5/24/10 at 61.) Madison testified that he went to Uniontown Hospital and met with the social worker, a nurse, and the family. (*Id.* at 62, 63.) He observed R.D.C. and stated that he was very lethargic, slept throughout his time at the hospital, and was very attached to R.C. (*Id.* at 62–63.) Madison testified that he spoke with B.K. by telephone on October 15, 2009, and she stated she did not do

---

**8.** "N.T. 9/14/10" refers to the transcript of the hearing conducted before the ALJ on September 14, 2010.

**9.** "N.T. 5/24/10" refers to the transcript of the hearing conducted before the ALJ on May 24, 2010.

crack in front of R.D.C. but had left R.D.C. somewhere where they did do crack in front of him. (*Id.* at 67.)

B.K. testified that she and R.C. were married prior to the incident in August of 2009. (N.T. 9/14/10 at 89–93.) B.K. invoked her Fifth Amendment rights regarding self-incrimination when questioned about her cocaine use while caring for R.D.C. in August of 2009. (*Id.* at 119–120.)

On January 12, 2011, the ALJ issued an Adjudication finding the testimony of CYS's witnesses to be credible and B.K.'s testimony to be not credible. (Adjudication at 3.) The ALJ also found that the indicated report of child abuse was accurate, stating:

> [T]he medical evidence established that the child was found to have cocaine in his system during the period of time he was in the care of his mother. The caseworker testified that when they first saw the child the child was lethargic. Dr. Squires testified that cocaine in a child's system would indeed impair the child's functioning if only temporarily. . . . Non-accidental is defined [in section 6303 of the Law] as "an injury that is the result of an intentional act that is committed with disregard of a substantial and unjustifiable risk." Clearly, whatever the mother's intention, the smoking of the cocaine in the car was intentional. Further, . . . Dr. Squires testified that the cocaine in the child's system did significantly impair his functioning albeit temporarily. Dr. Squires did not anticipate that the child would suffer permanent or long lasting effects. Nevertheless, this 17 month old child was found to have levels of cocaine in his

system while in the care and control of his mother. The mother's actions, quite simply were unconscionable. Happily, the child did not suffer any permanent or long lasting injuries. Nevertheless, the impairment he did sustain qualifies as "a serious physical injury" under § 6303 of the [Law]. It is clear finally that the evidence shows that the indicated report is warranted and the recommended request by [B.K.] for expungement be denied.

(Adjudication at 7–8.) As a result, the ALJ recommended that B.K.'s appeal be denied. (Recommendation at 1.)

On February 3, 2011, the Bureau's Manager issued the instant order adopting the ALJ's Recommendation in its entirety. B.K. then filed the instant petition for review.[10]

In this appeal, B.K. claims the Manager erred in adopting the Recommendation in its entirety because: (1) the finding of child abuse is not supported by substantial evidence; (2) the ALJ erred in requiring R.C. to testify as to spousal confidential communications after she invoked the privilege of section 5923 of the Judicial Code, 42 Pa.C.S. § 5923; and (3) the ALJ erred in permitting Dr. Squires to testify at the hearing because CYS failed to provide copies of the medical records that Dr. Squires used while testifying, in violation of an ALJ order.

■ We initially note that the proper inquiry into whether an indicated report of child abuse should be expunged is whether the report is accurate. *A.O. v. Department of Public Welfare*, 838 A.2d 35, 39 (Pa.Cmwlth.2003). Thus, in an appeal of a refusal to expunge an indicated report, the

---

**10.** This Court's scope of review in expunction proceedings is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether necessary findings of fact are supported by substantial evidence. *D.T. v. Department of Public Welfare*, 873 A.2d 850, 852 (Pa.Cmwlth.2005).

county agency must present evidence that outweighs any contrary evidence that the actions of the perpetrator constitute child abuse within the meaning of the Law. *D.T.*, 873 A.2d at 852–853. *See* section 6341(c) of the Law ("[T]he burden of proof at the hearing shall be on the appropriate county agency....."; section 3490.106(f) of DPW's regulations, 55 Pa.Code § 3490.106(f) ("The burden of proof in hearings held under this section is on the appropriate county agency.)").

■ B.K. first claims the Manager erred in adopting the Recommendation because the finding of child abuse is not supported by substantial evidence. Specifically, B.K. asserts that the evidence in this case does not demonstrate that R.D.C.'s exposure to cocaine resulted in a significant impairment of his physical functioning as required by the Law.

■■ The substantial evidence needed to maintain an indicated report of child abuse is "'evidence which so preponderates in favor of a conclusion that it outweighs, in the mind of the fact finder, any inconsistent evidence and reasonable inferences drawn therefrom.'" *D.T.*, 873 A.2d at 853 (quoting *R.P. v. Department of Public Welfare*, 820 A.2d 882, 885 (Pa.Cmwlth. 2003)). In determining whether substantial evidence exists to support a finding of fact, this Court must give the party in whose favor the appealed decision was rendered the benefit of all inferences that can be logically and reasonably drawn from the evidence. *B.J.K. v. Department of Public Welfare*, 773 A.2d 1271, 1276 (Pa. Cmwlth.2001).

■ In addition, the Bureau is the ultimate finder of fact in proceedings to expunge an indicated report. *D.T.*, 873 A.2d at 854. This Court will not disturb on appellate review the weight and credibility determinations made by the finder of fact. *Id.*

As noted above, section 6303(b)(1)(i) of the Law defines "child abuse," in pertinent part, as "[a]ny recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age." 23 Pa.C.S. § 6303(b)(1)(i). In turn, section 6303(a)(1) of the Law defines "serious physical injury," in pertinent part, as "[a]n injury that ... [s]ignificantly impairs a child's physical functioning, either temporarily or permanently." 23 Pa.C.S. § 6303(a)(1).

In the instant case, DPW presented the testimony of Dr. Squires who testified, in pertinent part, as follows:

Q. You spoke just a little bit ago with [B.K.'s counsel]. He mentioned about the child returning to normal.

At some point previously, are you able to conclude that the child was not normal, in other words, that he had been impaired somehow by the cocaine?

A. That was part of the history that was given, and part of the records.

Q. And a child of 17 months having any cocaine in his system, would that impair a child's functioning, even if only temporarily?

A. Yes.

\* \* \*

Q. Yes. Are you able to state within a reasonable degree of medical certainty that a child of 17 months old who was exposed to cocaine, that that would significantly impair the child's physical functioning even if it was only temporary?

A. I would say yes. It depends on the level, of course, so if it's a very low level, the child would have no symptoms. It has to be a certain amount of level that the child then has behavior and that it's affecting him. I guess you have to talk

about the individual child, but any child that has symptoms from cocaine, I think, that is an impairment.

\* \* \*

Q. Just to further clarify, Doctor—this is [CYS's counsel] again—you correct me if I am wrong, but my recollection was that there would be impairment now, but whether or not it would significantly impair the child would depend on the levels; is that correct?

A. If it were just a tiny, tiny, bit, the child may have no symptoms whatsoever, so the fact that he had symptoms says something about the quantity. I think you have to look at the individual case, and individual child who has symptoms from an exposure large enough to cause symptoms, and I would consider that an impairment.

Q. In this particular case, the symptoms that were reported to you by others in your record, would that indicate the level of impairment to you?

A. Yes.

Q. Would that be significant?

A. Yes.

\* \* \*

Q What was it in your records that indicate there was some impairment at all?

A The records that are ER notes talk about, agitation, unusual behaviors, hy-

peractivity, what we call a change of neuro status in a 17–month–old.

(N.T. 5/24/10 at 42–3, 44–5.)

In support of her assertion in this regard, B.K. cites evidence in the record supporting the conclusion that R.D.C. did not suffer from any physical injury due to his exposure to cocaine. However, giving CYS the benefit of all inferences that can be logically and reasonably drawn from the evidence, the foregoing testimony of Dr. Squires demonstrates that R.D.C. suffered "[a]n injury that ... [s]ignificantly impair[ed his] physical functioning, either temporarily or permanently" while in B.K.'s care. We simply will not accede to B.K.'s request to reweigh the evidence presented to the ALJ. As a result, B.K.'s claim that there is not substantial evidence to support the Manager's order adopting the ALJ's Recommendation in its entirety is patently without merit.

■ B.K. next claims that the ALJ erred in requiring R.C. to testify as to spousal confidential communications after she invoked the privilege of section 5923 of the Judicial Code.[11] Prior to R.C.'s testimony at the hearing before the ALJ, B.K. interposed an objection based on the section 5923 privilege. (N.T. 9/14/10 at 87–88, 95–98). However, the ALJ overruled the objection, determining that the exception to spousal incompetence contained in section 5924(b)(3) of the Judicial Code[12] applied. Although the ALJ erroneously re-

---

11. Section 5923 states:

Except as otherwise provided in this subchapter, in a civil matter neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial. 42 Pa.C.S. § 5923.

12. Section 5924(a) of the Judicial Code provides that "[i]n a civil matter neither husband nor wife shall be competent or permitted to testify against each other." 42 Pa.C.S.

§ 5924(a). However, section 5924(b) provides, in pertinent part:

(b) **Exception.**—Subsection (a) shall not apply in an action or proceeding

\* \* \*

(3) For custody or care of children, including actions or proceedings relating to visitation rights and similar matters.

(4) Arising under 23 Pa.C.S. Ch. 61 (relating to protection from abuse)....

42 Pa.C.S. § 5924(b)(3), (4).

lied upon section 5924(b)(3) in allowing R.C.'s testimony, he did not err in overruling B.K.'s objection in this regard.[13]

It must first be noted that the spousal incompetence provision of section 5924 and the spousal confidential communication privilege of section 5923 are quite separate and distinct. The former provision disqualifies a husband or wife to give any testimony adverse to the spouse subject to the exceptions in 5924(b); the latter is much more limited and relates to the competence of a spouse to testify regarding confidential communications. *See Commonwealth v. Spetzer,* 572 Pa. 17, 32–3, 813 A.2d 707, 717 (2002) (distinguishing the spousal incompetence provision of section 5913 of the Judicial Code [14] and the spousal confidential communication privilege of section 5914 of the Judicial Code [15] applicable in criminal proceedings).

■■■ The public policy sought to be enhanced by section 5923 is the preservation of marital harmony and the benefits that inure to society from such harmony. *Commonwealth ex rel. Platt v. Platt,* 266 Pa.Super. 276, 404 A.2d 410, 414 (1979). To be protected as a confidential communication, the information must be gained through the marital relationship and in the confidence that the relationship inspires. *Commonwealth v. Dubin,* 399 Pa.Super. 100, 581 A.2d 944, 946 (1990), *appeal denied,* 527 Pa. 592, 588 A.2d 912 (1991). Communications between spouses are presumed to be confidential and the party opposing the privilege bears the burden of overcoming this presumption. *Commonwealth v. Hancharik,* 534 Pa. 435, 442, 633 A.2d 1074, 1078 (1993).

However, section 6381(c) of the Law states, in pertinent part:

**(c) Privileged communications.**— Except for privileged communications between a lawyer and a client and between a minister and a penitent, a privilege of confidential communication between husband and wife ... shall not constitute grounds for excluding evi-

**13.** This Court will sustain DPW's decision even if the rationale for the decision was erroneous as long as the correct rationale for the decision is apparent from the record. *Maras v. Department of Public Welfare,* 111 Pa.Cmwlth. 404, 534 A.2d 153, 156 (1987). Because B.K. did not raise section 5924(a) as a ground for her objection to R.C.'s testimony, the ALJ erred in relying on an exception to the competency rule in section 5924(a) as the basis for overruling B.K.'s privilege objection under section 5923.

**14.** 42 Pa.C.S. § 5913. Section 5913 provides:
Except as otherwise provided in this subchapter, in a criminal proceeding a person shall have the privilege, which he or she may waive, not to testify against his or her then lawful spouse except that there shall be no such privilege:
(1) in proceedings for desertion and maintenance;
(2) in any criminal proceeding against either for bodily injury or violence attempt-

ed, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care or custody, or in the care or custody of either of them;
(3) applicable to proof of the fact of marriage, in support of a criminal charge of bigamy alleged to have been committed by or with the other; or
(4) in any criminal proceeding in which one of the charges pending against the defendant includes murder, involuntary deviate sexual intercourse or rape.

**15.** 42 Pa.C.S. § 5914. Section 5914 states:
Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

dence at any proceeding regarding child abuse or the cause of child abuse.

23 Pa.C.S. § 6381(c).

Thus, the spousal confidential communication privilege of section 5923 cannot be invoked in the instant expunction proceeding because B.K. could not have had a reasonable expectation of marital confidentiality in her statements pursuant to section 6381(c) of the Law.[16] *See Spetzer*, 572 Pa. at 41–43, 813 A.2d at 722–723 (holding that the spousal confidential communication privilege of section 5914 is inapplicable in a criminal proceeding because the declarant spouse could have no reasonable expectation of marital confidentiality in statements made regarding child abuse or the cause of child abuse in light of section 6381(c) of the Law.) As a result, the ALJ did not err in overruling B.K.'s objection in this regard and B.K.'s claim to the contrary is likewise patently without merit.

■ Finally, B.K. claims that the ALJ erred in permitting Dr. Squires to testify at the hearing because CYS failed to provide copies of the medical records that Dr. Squires relied upon while testifying. At the hearing, B.K. objected to Dr. Squires' testimony, asserting that it violated an order issued by another ALJ relating to the parties' obligations with respect to the taking of testimony by telephone. (N.T. 5/24/10 at 30–32; 33–34; 81–82.) B.K. argued that the prior order required CYS to furnish copies of the medical records upon which Dr. Squires would rely before she could testify by telephone. (*Id.* at 30–32.) CYS argued that the order only required it to furnish a copy of the records to B.K. if

it sought their admission into evidence. (*Id.*) The ALJ overruled B.K.'s objection to the testimony and ultimately determined that the order only required CYS to furnish the records if it sought their admission. (*Id.* at 32, 34, 81.)

However, the prior order upon which B.K. bases her claim is not contained in the certified record of this case. Rather, B.K. merely appended a copy of the order to her brief as Exhibit A.

■ An appellate court is limited to considering only those facts that have been duly certified in the record on appeal. *City of Pittsburgh Commission on Human Relations v. DeFelice*, 782 A.2d 586, 593 n. 10 (Pa.Cmwlth.2001). For purposes of appellate review, that which is not part of the certified record does not exist. *Id.* Documents attached to a brief as an appendix or reproduced record may not be considered by an appellate court when they are not part of the certified record. *Stabler Development Company v. Board of Supervisors of Lower Mt. Bethel Township*, 695 A.2d 882, 887 n. 5 (Pa.Cmwlth.1997), *appeal denied*, 553 Pa. 701, 718 A.2d 787 (1998). "[I]t is the responsibility of the appellant to supply this Court with a complete record for purposes of review. The failure by an appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue(s) sought to be examined." *Salameh v. Spossey*, 731 A.2d 649, 658 (Pa.Cmwlth.), *appeal denied*, 561 Pa. 663, 747 A.2d 903

---

**16.** Moreover, by its terms, the privilege provided in section 5923 only applies "upon the trial". 42 Pa.C.S. § 5923; *Commonwealth v. Jones*, 501 Pa. 162, 167, 460 A.2d 739, 741–42 (1983); *Dubin*, 581 A.2d at 946. Administrative agencies are not bound by technical rules of evidence at agency hearings and the agency may receive evidence if it is relevant to the

issues and of reasonable probative value. Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505; *Murphy v. Department of Public Welfare*, 85 Pa.Cmwlth. 23, 480 A.2d 382, 385–86 (1984). In fact, admissions against interest made by a party are admissible in civil proceedings before DPW. *Id.*

(1999) (citation omitted).[17]

B.K. could have sought inclusion of the order in the certified record of this appeal as a supplemental record pursuant to Pa. R.A.P.1926 or 1951(b). *Steglik v. Workers' Compensation Appeal Board (Delta Gulf Corporation)*, 755 A.2d 69, 74 n. 3 (Pa. Cmwlth.), *appeal denied*, 564 Pa. 720, 764 A.2d 1075 (2000); *Williams v. Workmen's Compensation Appeal Board (Green Construction Co.)*, 687 A.2d 428, 431 n. 3 (Pa. Cmwlth.1997). B.K.'s failure to make the order underlying her claim a part of the certified record of this appeal utterly precludes this Court from considering the merits of the claim and constitutes a waiv-

er of her allegation of error in this regard.[18]

Accordingly, the Manager's order is affirmed.

### ORDER

AND NOW, this 1st day of February, 2012, the February 3, 2011, order of the Department of Public Welfare is affirmed.

---

**17.** *See also Smith v. Smith*, 431 Pa.Super. 588, 637 A.2d 622, 623–24 (1993), *appeal denied*, 539 Pa. 680, 652 A.2d 1325 (1994) ("[I]t is the responsibility of the Appellant to supply this Court with a *complete* record for purposes of review ... [and] a failure by an Appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes a waiver of the issue(s) sought to be examined.") (emphasis in original and citations omitted); *Boyle v. Steiman*, 429 Pa.Super. 1, 631 A.2d 1025, 1030–31 (1993), *appeal denied*, 538 Pa. 663, 649 A.2d 666 (1994) ("[I]t is the duty of the appellant to supply this Court with a record which is sufficient to permit a meaningful appellate review. A failure by the appellant to insure that the original record certified for appeal contains sufficient information to conduct a meaningful appellate review con-

stitutes a waiver of the issue sought to be reviewed....") (citations omitted).

**18.** It must be noted that B.K.'s claim only relates to a purported violation of the other ALJ's order requiring disclosure of the medical records. B.K. has never alleged that the failure to provide the medical records implicated her due process or confrontation rights either before the ALJ or this Court. As a result, B.K. is precluded from raising such constitutional claims in this appeal. *See K.J. v. Department of Public Welfare*, 767 A.2d 609, 612 (Pa.Cmwlth.), *appeal denied*, 567 Pa. 750, 788 A.2d 381 (2001) (holding that when a party fails to raise an issue in an agency proceeding, even one of a constitutional dimension, the issue is waived and cannot be considered for the first time on appeal.)