| Philadelphia County Department of | : | SEALED CASE |
| Human Services, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Human Services, | : | No. 101 C.D. 2019 |
| Respondent | : | |
| | : | |
| Philadelphia County Department of | : | SEALED CASE |
| Human Services, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Pennsylvania Department of Human | : | |
| Services, | : | No. 102 C.D. 2019 |
| Respondent | : | Argued: November 12, 2019 |

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                        FILED: December 6, 2019

The Philadelphia County Department of Human Services (DHS) petitions this Court for review of the Pennsylvania Department of Human Services' (Department) Bureau of Hearings and Appeals' (BHA) December 31, 2018 order adopting the Administrative Law Judge's (ALJ) recommendation to sustain the subject child's (Child) father's (Father) and Child's Grandmother's (Grandmother)

appeals, and expunge their indicated reports[1] of child abuse from the ChildLine[2] and Abuse Registry (ChildLine Registry). DHS presents one issue for this Court's review: whether the ALJ erred by holding that, in order to prove serious medical neglect, DHS was required to show that the increased risk of an adverse outcome from the lack of medical treatment for Child's burn actually resulted in a different, more negative outcome for Child. After review, we affirm.

## Facts

On March 6, 2018, Child's mother (Mother) placed Child in a sink, and gave Child a bath. At the time of the bath, Father was asleep in Mother's home and was awakened by Child and Mother and discovered that Child sustained a burn. Father took Child from Mother and notified his mother, Grandmother, of the burn, and took Child to Grandmother's house so she could treat the burn. Grandmother agreed that she was able to treat Child's burn and did so for approximately two weeks, including giving Child Tylenol and Motrin, as well as cleaning the burn,

---

[1] Section 6303(a) of the Child Protective Services Law (CPSL) defines an "indicated report" as a report issued by DHS if it "determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following: (i) [a]vailable medical evidence[;] (ii) [t]he child protective service investigation[; or] (iii) [a]n admission of the acts of abuse by the perpetrator." 23 Pa.C.S. § 6303(a); *see also* Section 3490.4 of the Department's Regulations, 55 Pa. Code § 3490.4.

[2] Section 3490.4 of the Department's Regulations defines "ChildLine" as

> [a]n organizational unit of the Department which operates a [s]tatewide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of the CPSL (relating to establishment of [s]tatewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. . . .

55 Pa. Code § 3490.4. "The ChildLine Registry is maintained in accordance with the [CPSL.]" *In re: S.H.*, 96 A.3d 448, 450 n.2 (Pa. Cmwlth. 2014).

which began to heal. Between March 6 and March 18, 2018, Father visited Child daily at Grandmother's house.

On March 18, 2018, Grandmother became concerned about spots visible on the burn. Grandmother called Mother and instructed her to take Child to the doctor because Grandmother believed Child had a fungal wound infection, although the burn appeared to be healed. At an unspecified time between March 18 and March 20, 2018, Grandmother called Father to inquire whether Mother had taken Child to the doctor. Father replied no, that Mother went to work, and neither Mother nor Father had taken Child to the doctor. Grandmother travelled to Mother's house and told both Mother and Father that if they did not take Child to the doctor, she was going to call DHS.

Child was eventually taken to and treated at St. Christopher's Children's Hospital on or about March 20, 2018, and discharged on or about March 22, 2018. Child had a second-degree burn on her left leg, extending across the genital area and onto the right leg, well beyond Child's diaper on both thighs, comprising between 9% and 10% of Child's total body surface area. The burn subjected Child to significant pain at both the time of the injury and thereafter as a result of damage and destruction to the nerves in the skin dermis, and because of the location of the burn, which would cause Child pain when Child either urinated or defecated, or when Child needed to be wiped or cleaned. Child's burn was healing without infection or additional necessary ongoing specific burn care in the hospital.

On March 20, 2018, the Department's Investigating Intake Social Worker Jaabir Butler (Butler) received a report of child abuse naming Father and Grandmother as the perpetrators of Child's abuse. That same day, Butler commenced an investigation into the allegations by visiting Child at the hospital, by speaking to Mother, Father and Grandmother, and by taking three photographs of Child. On May 4, 2018, an indicated report of child abuse was filed with the ChildLine Registry

alleging physical abuse of Child as a result of serious physical neglect of Child due to Mother's, Father's and Grandmother's failure to provide medical treatment or care.

On July 11, 2018, Father and Grandmother filed appeals from DHS' decision, and both filed requests to bypass the administrative review and proceed directly to a hearing. On October 30, 2018, the ALJ held a hearing on the merits of their appeals. On December 27, 2018, the ALJ recommended that Father's and Grandmother's appeals be sustained and the Department be directed to expunge the indicated reports of child abuse from the ChildLine Registry. On December 31, 2018, the BHA adopted the ALJ's recommendation. DHS filed two separate but identical appeals to this Court.[3] By March 27, 2019 order, this Court consolidated the appeals.

**Discussion**

DHS argues that the ALJ erred by holding that, in order to prove serious medical neglect, DHS was required to prove that the increased risk of an adverse outcome from the lack of medical treatment to Child's burn actually resulted in a different, more negative outcome for Child. Specifically, DHS contends that the core element of recklessness is the actor's choice to engage in conduct that constitutes a gross deviation from the standard of conduct that a reasonable person would observe; thus, a finding of recklessness does not require a finding that the conduct harmed the victim.

The Department rejoins that the facts of this case demonstrate that DHS only filed the indicated reports against Father and Grandmother because Child would have benefitted from medical care on the day of the burn. The Department further

---

[3] "This Court's scope of review in expunction proceedings is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether necessary findings of fact are supported by substantial evidence." *B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 653 n.10 (Pa. Cmwlth. 2012).

4

asserts that DHS lacked evidence that Father and Grandmother acted recklessly under the Child Protective Services Law (CPSL).[4]

Initially, Section 6303(b.1) of the CPSL defines "child abuse," in pertinent part, as "intentionally, knowingly or **recklessly** . . . [c]ausing serious physical neglect of a child." 23 Pa.C.S. § 6303(b.1) (emphasis added). Section 6303(a) of the CPSL defines "serious physical neglect" as:

> Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:
>
> (1) A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities.
>
> (2) **The failure to provide a child** with adequate essentials of life, including food, shelter or **medical care**.

23 Pa.C.S. § 6303(a) (emphasis added).

> Further, Section 6303(c) of the CPSL provides:
>
> Conduct that causes injury or harm to a child or creates a risk of injury or harm to a child shall not be considered child abuse if there is no evidence that the person acted intentionally, knowingly or **recklessly** when causing the injury or harm to the child or creating a risk of injury or harm to the child.

23 Pa.C.S. § 6303(c) (emphasis added). Finally, in defining "recklessly," Section 6303(a) of the CPSL refers to the Crimes Code[5] definition.[6] Section 302(b)(3) of the Crimes Code specifies:

---

[4] 23 Pa.C.S. §§ 6301-6386.

[5] 18 Pa.C.S. §§ 101-9402.

[6] Specifically, Section 6303(a) of the CPSL provides that "[t]he term shall have the same meaning as provided in [Section 302 of the Crimes Code,] 18 Pa.C.S. § 302 (relating to general requirements of culpability)." 23 Pa.C.S. § 6303(a).

A person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

Here, relative to Father, the ALJ explained:

[F]ollowing the burn to [Child], [Father] cared for [Child] by immediately taking [Child] to his mother, [Grandmother] who agreed to further care for [Child] and her burn, which she did for a period of two (2) weeks. [Father] came to check on [Child] every day. Such conduct by [Father] during this period of time was neither negligent nor reckless, as he had taken steps to have his mother, [Grandmother] care for [Child's] burn, and [Grandmother] assured [Father] that she was able to do so. Father was not reckless in relying on [Grandmother's] representations, given the specific facts in this case.

The closest [Father] came to engaging in reckless behavior was when [Father] was informed by his mother, [Grandmother], that [Child's] burn had 'spots' visible on the burn around March 18, 2018, and [Grandmother] called [Mother] and told [Mother] to take [Child] to the doctor, because [Grandmother] believed [Child] had a 'fungal wound infection,' although the burn appeared to [Grandmother] to be healed. [Reproduced Record (R.R.) at 142a.] At an unspecified time between March 18, 2018, and March 20, 2018, [Grandmother] called her son, [Father] to inquire whether [Child] had been taken to the doctor by [Mother]. [Father] replied 'No,' that [Mother] went to work, but neither [Mother] nor [Father] had taken [Child] to the doctor; [Grandmother] travelled to [Mother's] house, and also told both [Mother] and [Father] that 'if they didn't take [Child] to the doctor, that [Grandmother] was going to call DHS.' I find [Father's] delay at this period of time to be negligent; however, [Grandmother's] actions eventually resulted in [Child] being taken to [] St. Christopher's Hospital for Children.

There is insufficient evidence regarding [Father's] mens rea at that time to establish that [Father] was reckless as opposed to being merely negligent in not seeking medical attention immediately upon [Grandmother's] insistence. As the Department stated in closing argument, [Father's] state of mind at this time was unknown. [R.R. at 148a.] However, the evidence does not prove that [Father] was reckless given the facts in this case, the length of delay, and the nature and extent of the injury to [Child], which [Marita] Lind[, M.D.] testified was not infected, nor was there any determined need for ongoing specific burn care in the hospital. As it is the Department's burden of proof, I would have to guess to find that [Father's] actions, or inactions rose beyond ordinary negligence to recklessness, and I cannot guess.

ALJ Op. 13-14.

This Court discerns no error in the ALJ's reasoning. Because the record does not support a finding that Father "disregard[ed] a substantial and unjustifiable risk that [injury or harm to the child would] result from his conduct," 18 Pa.C.S. § 302(b)(3), this Court is constrained to hold that Father did not engage in conduct that constitutes a gross deviation from the standard of conduct that a reasonable person would observe.

With respect to Grandmother, the ALJ expressly opined:

[Grandmother] believed she could care for [Child's] wound, and did care for it for a period of approximately two (2) weeks. [Grandmother] gave [Child] Tylenol and Motrin, and cleaned and cared for [Child] and the burn to the best of her ability. When the burn appeared to have suspicious 'spots' on it, [Grandmother] immediately told both [Mother] and . . . her son, [Father], insisting that [Child] be seen by a doctor. When [Child] was not taken to a physician within a day or so by either [Mother] or [Father], [Grandmother] went so far as to threaten to call [] DHS in order to insure that [Child] was, in fact, taken to a physician, which did occur shortly thereafter when [Child] was taken to St. Christopher's Hospital for Children.

. . . .

7

> Accordingly, I find that . . . [Grandmother's] conduct was not reckless. It is unclear that there would have been a different result had [Child] been brought to the hospital earlier, and it has not been established that . . . [Grandmother's] care of [Child] was improper, negligent, or reckless.

ALJ Op. at 13. This Court discerns no error in the ALJ's reasoning. Because the record does not support a finding that Grandmother "disregard[ed] a substantial and unjustifiable risk that [injury or harm to the child would] result from [her] conduct," 18 Pa.C.S. § 302(b)(3), this Court holds that Grandmother did not engage in conduct that constitutes a gross deviation from the standard of conduct that a reasonable person would observe.

## Conclusion

For all of the above reasons, the Department failed to satisfy its burden of proving by substantial evidence that either Father or Grandmother is a perpetrator of physical abuse of Child, by serious physical neglect. Accordingly, the BHA's order is affirmed.

_____
ANNE E. COVEY, Judge

8

Philadelphia County Department of :  <u>SEALED CASE</u>
Human Services, :
    Petitioner :
       :
  v. :
       :
Department of Human Services, :  No. 101 C.D. 2019
    Respondent :
       :
Philadelphia County Department of :  <u>SEALED CASE</u>
Human Services, :
    Petitioner :
       :
  v. :
       :
Pennsylvania Department of Human :
Services, :  No. 102 C.D. 2019
    Respondent :

# O R D E R

AND NOW, this 6th day of December, 2019, the Pennsylvania Department of Human Services' Bureau of Hearings and Appeals' December 31, 2018 order is affirmed.

         _____
         ANNE E. COVEY, Judge