v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 24, 2012.

Decided Oct. 11, 2012.

Dianne H. Zerega, Uniontown, for petitioner.

Anthony S. Dedola, Jr., Uniontown, for intervenor Fayette County Children and Youth Services.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McGINLEY.

T.D. petitions for review of the final order of the Department of Public Welfare (DPW) Bureau of Hearings and Appeals

(BHA), which adopted the Administrative Law Judge's (ALJ) Recommendation and denied T.D.'s request to expunge an indicated report of child abuse.[1]

On May 3, 2011, FCCYS received a report of suspected abuse involving a 10–year old female child, K.D. The report alleged that the child had been at risk when the natural mother, T.D., took steps to commit suicide and intended to take her child's life along with her own. Specifically, she intended to take their lives by inserting a hose from the tailpipe of her vehicle into the inside of the vehicle so that the two would die of carbon monoxide poisoning. Caseworker Nicole Robinson (Caseworker Robinson) conducted the investigation.

After interviewing the child, the child's father, the mother's therapist, and others, Caseworker Robinson filed a CY–48 on June 3, 2011, indicated the case and listed T.D. as the perpetrator. The reason given for the indicated case was that the child was placed at imminent risk of physical abuse since the mother admitted that she planned to kill herself and her daughter.

Subsequently, T.D. requested expungement of the indicated report. The Child-Line and Abuse Registry denied her request and T.D. filed an appeal to the BHA.

The ALJ heard testimony on September 13, 2011. FCCYS offered the testimony of Tracy Kowal (Kowal), a licensed social worker and private therapist. Kowal had her own private practice and also contracted with the Crimes Victims' Center (CVC) in Uniontown. Through the contract with CVC Kowal provided sexual assault counseling. Kowal came into contact with T.D. through her contract with CVC.

T.D.'s counsel objected to Kowal's testimony on the grounds that it violated the sexual assault counselor/patient privilege set forth in 42 Pa.C.S. § 5945.1(b)[2]. Counsel argued that T.D.'s admissions were made in the course of her therapy sessions with Kowal and as such they were absolutely privileged.

The FCCYS argued, on the other hand, that Kowal was required to report the suspected child abuse under Section 6311 of the Child Protective Services Act, 23 Pa.C.S. § 6311.[3]

---

1. Fayette County Children and Youth Services (FCCYS) has intervened and filed a Brief.

2. The sexual assault counselor privilege, 42 Pa.C.S. § 5945.1(b), provides:

   **(b) Privilege**
   (1) No sexual assault counselor or an interpreter translating the communication between a sexual assault counselor and a victim may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceedings.
   (2) No co-participant who is present during counseling may disclose a victim's confidential communication made during the counseling session nor consent to be examined in any civil or criminal proceeding without the written consent of the victim.

3. Certain persons are required to report suspected child abuse pursuant to Section 6311 of the Child Protective Services Law, 23 Pa. C.S. § 6311:

   Persons who in the course of their employment, occupation or practice of their profession, come into contact with children shall report or cause a report to be made ... when the person has reasonable cause to suspect, on the basis of medical, professional or other training and experience, that a child under the care, supervision, guidance or training of that person or of an agency, institution, organization or other entity with which that person is affiliated is a victim of child abuse, including child abuse by an individual who is not a perpetrator.

After a lengthy discussion with counsel, the ALJ permitted Kowal to testify only with respect to her child abuse discussions with T.D. but not regarding any sexual assault issues she may have previously discussed with T.D. Hearing Transcript, September 13, 2011, (H.T.) at 25; Reproduced Record (R.R.) at 10a. The ALJ instructed the parties and witness:

[I]t sounds to me more like all we are doing here, we are not dealing with any sexual assault counseling, we are dealing with problems which may have created a depression, and we are not going to get into or we won't discuss anything that may have been discussed with respect to your counseling as a sexual assault counselor.

H.T. at 39; R.R. at 15a.

The ALJ stated he would revisit T.D.'s motion to exclude Kowal's testimony before he issued the adjudication after giving the parties an opportunity to brief the issue.

Kowal testified that her first formal session with T.D. occurred on April 14, 2011. T.D. initially went to see Kowal "because she was having some problems coping with some situations in her life, particularly the fact that she was separated from her husband, she was suffering extreme anxiety." H.T. at 38; R.R. at 15a. On that date, T.D. revealed to Kowal that "there had been a sex assault in her life." H.T. at 46; R.R. at 17a. Kowal did not testify regarding the details of that sex assault. T.D. also told Kowal that she had thoughts of suicide. Kowal urged T.D. to get psychological intervention. H.T. at 46; R.R. at 17a.

The next time Kowal met with T.D. was on May 3, 2011. T.D.'s sister, TRZ, was also present on that occasion. T.D. and her sister "wanted to get some assistance for T.D. and placement, possibly" and because "they were at a loss of what to do.

They knew that she needed . . . intervention." H.T. at 47–48; R.R. at 17a. T.D. and TRZ relayed to Kowal that T.D. attempted to kill herself and her daughter on April 30, 2011. H.T. at 39–40; R.R. at 15a. Kowal testified:

Q. Did she give you specifics on how she attempted to do this?

A. Yes.

Q. Could you tell us what she told you, please.

A. T.D. told me that . . . the electricity had been shut off, and she talked with her daughter about, I believe, watching the movie in the car, she got her daughter into the car under that premise. T.D. was hoping her daughter would fall asleep. She also put the dog in the car.

Q. Where was the car, did she tell you?

A. It was in her garage.

Q. All right. Continue.

A. Once the daughter was asleep, T.D. hooked up a hose from the exhaust and put it into the back of the car. She turned the car on. The dog was barking, and T.D. just thought that wasn't going to—my recollection, that was not going to work.

She went, gave the dog an Ativan to calm the dog down, and she did this again.

Q. Did what again?

A. She rehooked the car up to the exhaust.

Q. All right.

A. The dog continued to bark. T.D. realized that she needed to stop, and she called her sister for help.

H.T. at 40–41; R.R. at 15a.

At Kowal's recommendation T.D. agreed to voluntarily go to Western Psychiatric Institute and Clinic.

K.D., the minor child, testified that on the day of the incident, she and her mother went shopping at Wal–Mart. When T.D. and K.D. returned home the power was "out.[4]" H.T. at 66; R.R. at 21a. T.D. told K.D. that they had to sleep in the car. H.T. at 66; R.R. at 21a. T.D. told K.D. to bring her movie player and a DVD. K.D. also brought her blanket, pillow and two dogs with her into the car. H.T. at 66; R.R. at 21a. K.D. testified that her mother did not get into the car right away and that she was "still doing something." *Id.* K.D. testified that the car was "running" because she saw her put her key in the "little thingy magiky" that turns the car on. H.T. at 67; R.R. at 21a. T.D. told K.D. to go to sleep so she did. Before K.D. fell asleep she heard the car turn on and her mother texting. The next thing K.D. remembered being awakened by her cousin, Carey Z. Her aunt, TRZ [5], was also in the garage. She testified that the car was still running when she woke up and that she "smelled the car." H.T. at 68; R.R. at 68; R.R. at 21a. She then got into her aunt's car and was driven to her aunt's house.

T.D.'s nephew, Carey Z, testified that in the early morning hours of the date of the incident, he received two texts from T.D., which stated "I need your help" and "I need to talk to your mom." H.T. at 132; R.R. at 37a. He and his mother drove to T.D.'s house where he retrieved K.D. and her two dogs from the backseat of her mother's car. K.D. did not appear ill or injured. He denied smelling exhaust in the garage.

T.D's sister (K.D.'s aunt), TRZ testified that when she got to T.D.'s house T.D. was in her car. K.D. was also in the car. TRZ denied smelling exhaust. TRZ testified that T.D. was admitted to Western Penn Psychiatric Hospital in Pittsburgh several days later where she remained for 60 days. H.T. at 165–166; R.R. at 45a–46a.

Following the hearing, the ALJ found Kowal to be credible. He found the child, Carey Z, and TRZ, to be credible in part. The ALJ also found the fact that T.D. voluntarily admitted herself to Western Psychiatric Hospital corroborated Kowal's testimony. The ALJ concluded, based on the credited testimony, that T.D. attempted to kill herself and her child on April 14, 2011.

With respect to whether Kowal's testimony was privileged, the ALJ determined that Kowal was required to disclose the suspected child abuse pursuant to Section 6311 of the Child Protective Services Law, 23 Pa.C.S. § 6311, and that 42 Pa.C.S. § 5945.1(b) did not apply to admissions of child abuse which were unrelated to a prior sexual assault. The ALJ found no privileged communication existed because T.D. and her sister met with Kowal on May 3, 2011, not in connection with a sexual assault, but "because they wanted assistance for [T.D.] and were at a loss of what to do." Adjudication, February 25, 2012, Finding of Fact 12 at 6. The ALJ recommended that T.D.'s appeal be denied. On March 8, 2012, the BHA entered an order which adopted the ALJ's recommendation.

■■ On appeal [6], T.D. argues that the ALJ erred as a matter of law when he

---

4. By all accounts, the electricity was turned off for nonpayment.

5. TRZ was T.D.'s sister.

6. This Court's scope of review from adjudications of the DPW is limited to determining whether there is substantial evidence to support the adjudication, whether the constitutional rights of the Petitioner have been violated, and whether the adjudication is contrary to law. *Montgomery County Child Welfare Services v. Sarah Hull, Respondent,* 51 Pa.Cmwlth. 1, 413 A.2d 757 (1980).

permitted Kowal to testify about what T.D. revealed to her on May 3, 2011. T.D. contends that Kowal met with her on May 3, 2011, in her "official capacity as a sexual assault counselor" and that the sexual assault counselor privilege, 42 Pa.C.S. § 5945.1(b), is an absolute bar to Kowal's testimony absent a written release.[7] T.D. contends that the ALJ erred when he concluded that Kowal was free to disclose anything said by T.D. so long as it did not include statements related to the sex assault. According to T.D., the privilege precludes a sexual assault counselor from revealing *any* communication regardless of whether it related to the alleged sexual assault. She maintains a sexual assault counselor does not have the ability to pick and choose what she will reveal. She claims that Kowal was precluded from revealing *any* information about T.D. or testifying about *any* aspect of their communications. With regard to Section 6311 of the Child Protective Services Law, 23 Pa. C.S. § 6311, T.D. argues this provision does not apply because only those who come into contact with abused children are required to report incidents of abuse.

The ALJ, the BHA and parties failed to direct the Court to Section 6381(c) of the Child Protective Services Law, 23 Pa.C.S. § 6381(c), which directly governs the matter at hand. Section 6381(c) of the Child Protective Services Law, 23 Pa.C.S. § 6381(c), which deals with evidence in court proceedings and administrative hearings relating to expunction of information (Section 6341), provides:

(c) **Privileged communications.**—Except for privileged communications between a lawyer and a client and between a minister and penitent, a privilege of confidential communication between husband and wife or between any professional person, including but not limited to, physicians, psychologists, counselors, employees of hospitals, clinics, day-care centers and schools and their patients or clients, *shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse.*

In *B.K. v. Department of Public Welfare*, 36 A.3d 649 (Pa.Cmwlth.2012), this Court recently addressed this Section as it pertained to the spousal privilege involving an expunction hearing. As in this controversy, the ALJ, the BHA and parties failed to acknowledge the applicability of Section 6381(c) of the Child Protective Services Law, 23 Pa.C.S. § 6381(c).

In *B.K.*, a medical examination revealed that R.D.C., seventeen months old at the time, had been exposed to cocaine. Fayette County Children and Youth Services (CYS) filed an indicated report. The child's mother, B.K., appealed and hearings were conducted. Prior to the hearings, B.K. objected to her husband's testimony based on the spousal "confidential communications" privilege of Section 5923 of the Judicial Code, 42 Pa.C.S. § 5923. The ALJ overruled the objection based on the exception to spousal "incompetence" contained in Section 5924(a)(3) of the Judicial Code, 42 Pa.C.S. § 5924(a)(3) which bars the privilege "in proceedings or actions ... for custody and care of children." *B.K.*, 36 A.3d at 655.

B.K.'s husband testified that B.K. first told him that she had their son in a crack house and then told him she had their son in a car while she was smoking crack cocaine. *B.K.*, 36 A.3d at 652. Based on testimony of the caseworker, the medical

---

7. T.D. lists five issues in her Statement of Questions Involved, but only addresses this one issue in her Brief.

experts, and B.K.'s husband, the ALJ concluded that the indicated report of child abuse was accurate. BHA adopted the ALJ's Recommendation in its entirety.

On appeal, B.K. argued, *inter alia*, that the ALJ erred in requiring her husband to testify as to spousal confidential communications after she invoked the privilege. This Court affirmed on other grounds because B.K. could not invoke the spousal confidential communications privilege during an expunction hearing based on Section 6381(c) of the Child Protective Services Law, 23 Pa.C.S. § 6381(c).

The wording of the statute is clear and consistent with the purpose of the Child Protective Services Law which is to prevent the further abuse of children. Any privileged communication between T.D. and Kowal, to the extent that one existed, did not constitute grounds for excluding evidence in the expunction hearing.

The order of the BHA is affirmed.

### *ORDER*

AND NOW, this 11th day of October, 2012, the order of the Department of Public Welfare Bureau of Hearings and Appeals in the above-captioned matter is hereby affirmed.