## PITTSBURGH ACTION AGAINST RAPE, Petitioner,

v.

## DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 15, 2015.

Decided July 14, 2015.

Erica N. Burns, Pittsburgh, for petitioner.

Amy Jo Carnicella, Assistant Counsel, Pittsburgh, for respondent.

BEFORE: MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge PATRICIA A. McCULLOUGH.

This case of first impression addresses whether privileged or confidential communications between sexual assault counselors and their patients or clients are admissible as evidence in child abuse expungement proceedings. Pittsburgh Action Against Rape (PAAR) petitions for review of the May 27, 2014 oral ruling from an administrative law judge (ALJ) denying its motion to quash a subpoena and directing an employee/counselor, V.W., to testify at an expungement hearing concerning communications that a victim made to her during sexual assault counseling.

Upon review, we conclude that the ALJ's ruling is appealable as a collateral order. In keeping with the express purpose of the Child Protective Services Law (CPSL),[1] specifically, to protect the child from sexual abuse, we further conclude that the language of section 6381(c) of the CPSL, 23 Pa.C.S. § 6381(c), pertaining to statements between counselors and their patients or clients, necessarily includes statements between a sexual assault counselor and a victim of sexual assault (patient/client) and renders them admissible as evidence in expungement proceedings. This conclusion is not only compelled by the plain language of section 6381(c) of the CPSL but also furthers the overarching intent and purpose of the CPSL to "encourage more complete reporting of suspected child abuse" and to provide "protection for children from further abuse."

Section 6302(b) of the CPSL, 23 Pa.C.S. § 6302(b). Specifically, section 6302(b) of the CPSL states:

(b) Purpose—It is the purpose of [the CPSL] to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, **providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained.** It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S. § 6302(b) (emphasis added).

■ Clearly, the CPSL's purpose encompasses not only remedying circumstances of past abuse, but preventing further abuse of children who have already been victimized. Expunction proceedings could render prior protection meaningless if necessary information concerning the circumstances of abuse was precluded and the proceedings relied, instead, only on the alleged perpetrator's statement of facts.

1.  23 Pa.C.S. §§ 6301–6386.

■ In discussing the underlying purpose of the CPSL, our Supreme Court has stated: "The need to prevent child abuse and to protect abused children from further injury is critical. The legislature sought to encourage greater reporting of suspected child abuse in order to prevent further abuse and to provide rehabilitative services for abused children and their families. The [CPSL] also establishes a statewide central registry for the maintenance of indicated and founded reports of child abuse, as identifying perpetrators of abuse serves to further protect children." *P.R. v. Department of Public Welfare*, 569 Pa. 123, 801 A.2d 478, 483 (2002) (citations omitted).[2]

### Background

M.L. instituted administrative proceedings seeking expunction of an indicated report identifying him as the perpetrator of child abuse against his daughter, L.S. On May 7, 2014, the Department of Public Welfare (DPW), Bureau of Hearings and

Appeals, acting upon the request of Washington County's Children and Youth Social Service Agency (CYS), served a subpoena on V.W. The subpoena was issued to V.W. in her role as a counselor for PAAR and ordered her to testify at M.L.'s May 27, 2014 expunction hearing. (Reproduced Record (R.R.) at 7a–8a.) It is undisputed that V.W. provided sexual assault counseling services to L.S. (DPW's brief at 2; *see* PAAR's brief at 6–7.)

PAAR and V.W. filed a motion to quash the subpoena, contending that V.W. is a sexual assault counselor and that her testimony was absolutely privileged pursuant to section 5945.1(b) of the Judicial Code, 42 Pa.C.S. § 5945.1(b), because L.S. did not waive the privilege through written consent.[3] (R.R. at 3a–4a.)

At the expungement hearing, the ALJ orally denied the motion to quash and ordered V.W. to testify. The ALJ also denied PAAR's request to stay the proceedings pending appeal and considered,

2.  Through the enactment of various legislation, our General Assembly has articulated that the Commonwealth has a predominant public policy and compelling interest in protecting children from abuse. *See, e.g.,* section 6311 of the CPSL, 23 Pa.C.S. § 6311 ("Persons required to report suspected child abuse"); *Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 215 (2007) (discussing child pornography statute and stating that the purpose of the statute "is plainly to protect children" and "end the abuse and exploitation of children"); *Cipolla v. Cipolla*, 264 Pa.Super. 53, 398 A.2d 1053, 1054 n. 1 (1979) (discussing the Protection from Abuse Act, Act of October 7, 1976, P.L. 1090, No. 218, 35 P.S. §§ 10181–10190, and the court's authority to enter an *ex parte* order to protect "minor children from abuse.").

In December 2011, the General Assembly established a Task Force on Child Protection to conduct a comprehensive review of the laws and procedures relating to the reporting of child abuse and the protection of the health and safety of children. *See* Report of the Task

Force on Child Protection, available at: http://www.childprotection.state.pa.us/ Resources/press/2012–11–27% 20Child% 20Protection% 20Report% 20FINAL.pdf. To a degree, the General Assembly has passed legislation based upon the Task Force Committee's recommendations. *See, e.g.,* Act of Dec. 18, 2013, P.L. 1163, No. 105 (effective January 1, 2014) (providing for a sentence enhancement within sentencing guidelines for offenses involving sexual abuse of children); Act of Dec. 18, 2013, P.L. 1167, No. 107 ·(effective January 1, 2014) (mandating that child abuse be considered when awarding custody); Act of Dec. 18, 2013, P.L. 1170, No. 108 (effective December 31, 2014) (updating the definition of "child abuse" in numerous ways).

3.  Section 5945.1(b) of the Judicial Code contains a sexual assault counselor/patient privilege that protects from disclosure confidential communications between a sexual assault counselor and a sexual assault victim, unless the victim provides written consent to waive the privilege.

but did not expressly rule on, CYS's objection that counsel for PAAR be present during V.W.'s testimony. CYS argued that counsel for PAAR should not be allowed to attend V.W.'s testimony because V.W. was not a party to the action and people are not normally allowed to observe expungement proceedings. (R.R. at 14a–15a.)

V.W. testified at the hearing, seemingly without the assistance of counsel, and provided information pertaining to her interaction with L.S. and L.S.' symptoms. (R.R. at 35a–37a.) On direct examination, V.W. was asked by CYS's attorney, among other things, the following questions:

Q. Now, in the course of your counseling with L.S., did [L.S.] ever describe to you or disclose to you what had occurred to her if anything?

A. Well, you know, she wouldn't go into a lot of detail, which sometimes kids don't. I mean, that's not—we're not there to be fact-finders or investigators and so forth, you know. Try to encourage the kids to talk as much as they can and they're willing to. But our work, you know, doesn't hinge on that. I'll put it that way.

She did at one point say that her dad had hurt her, had hurt her pee-pee, and that he had scared her. She would talk about being frightened by her father. So that's—

Q. Did [L.S.] tell you how [M.L.] had hurt her pee-pee?

A. No. She didn't go into details with that . . . .

(R.R. at 36a.)

At the conclusion of V.W.'s testimony, and despite the content of that testimony, the ALJ found that V.W. "made absolutely no revelations about anything [L.S.] told her concerning the sexual issue here." (R.R. at 37a.)

PAAR and V.W. filed a petition for review from the ALJ's May 27, 2014 ruling from the bench denying their motion to quash and compelling V.W. to testify. By *per curiam* order dated August 13, 2014, this Court directed the parties to address the appealability of this order.

### The ALJ's Order is Appealable as a Collateral Order

■ Initially, we must determine whether we have jurisdiction over PAAR's appeal. As a general rule, an appellate court's jurisdiction extends only to review of final orders. *Rae v. Pennsylvania Funeral Directors Association*, 602 Pa. 65, 977 A.2d 1121, 1124–25 (2009). However, PAAR contends that the ALJ's ruling qualifies as an appealable order under the collateral order doctrine because it involves the potential disclosure of confidential or privileged communications. DPW agrees with PAAR's assertion.

■ Under Pa.R.A.P. 313(a), an appeal may be taken as of right from a collateral order of an administrative agency or court. Pa.R.A.P. 313(a). An order is an appealable collateral order if: (1) the order is separable from the main cause of action; (2) the right involved is too important to be denied review; and (3) the claim would be irreparably lost should review be denied. Pa.R.A.P. 313(b); *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547, 550 (1999). Each prong of the collateral order doctrine must be met before an order may be considered appealable. *Melvin v. Doe*, 575 Pa. 264, 836 A.2d 42, 47 (2003).

■ Although an order denying a motion to quash a subpoena is generally interlocutory and non-appealable, *see Darlington, et. al*, 20 PENNSYLVANIA APPELLATE PRACTICE § 312:46 (2013–2014 ed.), orders involving privileged material are usually appealable under the collateral order doctrine because if immediate appellate re-

view is not granted, the disclosure of privileged material cannot be undone and subsequent appellate review would be rendered moot. *MarkWest Liberty Midstream & Resources, LLC v. Clean Air Council,* 71 A.3d 337, 342 (Pa.Cmwlth. 2013). *See also Commonwealth v. Kennedy,* 583 Pa. 208, 876 A.2d 939, 942–44 (2005) (holding that the denial of a motion to quash or withdraw a subpoena was an appealable collateral order because it implicated the work-product doctrine); *Schwartz,* 729 A.2d at 550–52 (same, statutory privileges). Further, statutory privileges concern important rights rooted in public policy and resolution of their applicability is typically an inquiry separate from the underlying merits of the controversy. *See Commonwealth v. Harris,* 612 Pa. 576, 32 A.3d 243, 247–51 (2011); *Jacksonian v. Temple Health System Foundation,* 862 A.2d 1275, 1280 (Pa.Super.2004).

■ Here, the ALJ denied PAAR's and V.W.'s motion to quash the subpoena on the ground that it sought disclosure of privileged communications in violation of section 5945.1 of the Judicial Code and ordered V.W. to testify. In the procedural context of this case, the ALJ's ruling essentially determined that section 5945.1 of the Judicial Code was inapplicable and could not be invoked during V.W.'s testimony as a shield to questioning. On this record, the ALJ's oral order was separable from the main issue of expunction of an indicated report; involved an important right deeply rooted in public policy as reflected by statute; and the asserted privilege would be irreparably lost if review were not had. Therefore, we conclude that the ALJ's order satisfied the requirements of the collateral order doctrine and that PAAR can appeal from this ruling as

a matter of right. *MarkWest; see also Berkeyheiser v. A–Plus Investigations, Inc.,* 936 A.2d 1117, 1123–24 (Pa.Super.2007) ("Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action.").

### V.W.'s Testimony is Admissible under Section 6381(c) of the CPSL

■ On the merits,[4] PAAR argues that the ALJ erred in failing to quash the subpoena because V.W.'s testimony was privileged, *per se,* under section 5954.1(b)(1) of the Judicial Code. PAAR contends that L.S. did not consent or waive the privilege and that she has a reasonable expectation of privacy that her communications with V.W. will remain protected.

DPW asserts that for purposes of expungement hearings, section 6381(c) of the CPSL displaces or renders inapplicable the privilege codified in section 5954.1(b) of the Judicial Code. For support, DPW directs our attention to *T.D. v. Department of Public Welfare,* 54 A.3d 437 (Pa.Cmwlth. 2012).

When engaging in statutory interpretation or construction, the objective is to ascertain and effectuate the intention of the General Assembly and to construe every statute, if possible, so as to give effect to all of its provisions. Section 1921(a) of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1921(a). *See Concerned Citizens for Better Schools v. Brownsville Area School District,* 660 A.2d 668, 671 (Pa.Cmwlth.1995) ("[W]henever possible, the courts must interpret statutes to give meaning to all of their words and

---

4. This Court will reverse an ALJ's decision to enforce a subpoena only when the ALJ committed a clear abuse of discretion. *See KC*

*Equities v. Department of Public Welfare,* 95 A.3d 918, 933 (Pa.Cmwlth.2014).

phrases so that none are rendered mere surplusage."). Generally, words and phrases within a statute are construed in accordance with their common and approved usage, but technical words and phrases shall be construed according to their peculiar and appropriate meaning or definition. Section 1903 of the SCA, 1 Pa.C.S. § 1903.

Section 5945.1(b)(1) of the Judicial Code, governing confidential communications with sexual assault counselors, states:

(b) Privilege.

(1) No sexual assault counselor or an interpreter translating the communication between a sexual assault counselor and a victim may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding.

42 Pa.C.S. § 5945.1(b)(1). In relevant part, "confidential communication" is defined as: "All information, oral or written, transmitted between a victim of sexual assault and a sexual assault counselor in the course of their relationship...." Section 5945.1(a) of the Judicial Code, 42 Pa.C.S. § 5945.1(a).[5]

Section 6381 of the CPSL, which deals among other things with the admissibility of evidence in administrative expungement hearings, provides in pertinent part:

(a) General rule.—In addition to the rules of evidence provided under 42 Pa. C.S. Ch. 63 (relating to juvenile matters), **the rules of evidence in this section shall govern** in child abuse proceedings in court or **in any department administrative hearing pursuant to section 6341 (relating to amendment or expunction of information).**[6]

\*　　\*　　\*

(c) Privileged communications.—Except for privileged communications between a lawyer and a client and between a minister and a penitent, **a privilege of confidential communication between** husband and wife or between any professional person, including, but not limited to, physicians, psychologists, **counselors,** employees of hospitals, clinics, day-care centers and schools **and their patients or clients, shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse.** 23 Pa.C.S. § 6381(a), (c) (emphasis added).

■■ We note that section 5945.1 of the Judicial Code was originally enacted by the legislature on December 23, 1981,[7]

---

**5.** In its entirety, "confidential communication" is defined as:

All information, oral or written, transmitted between a victim of sexual assault and a sexual assault counselor in the course of their relationship, including, but not limited to, any advice, reports, statistical data, memoranda, working papers, records or the like, given or made during that relationship, including matters transmitted between the sexual assault counselor and the victim through the use of an interpreter.

42 Pa.C.S. § 5945.1(a).

**6.** *See* section 6341(a)(2) of the CPSL, 23 Pa. C.S. § 6341(a)(2) ("Any person named as a perpetrator, and any school employee named,

in an indicated report of child abuse may, within 45 days of being notified of the status of the report, request the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter.").

**7.** Act 1981–169 (S.B. 532), P.L. 585, § 1, approved Dec. 23, 1981, eff. in 60 days. Since 1981, the statute has been amended twice to make minor changes to the language used, but the privilege for communication between a sexual assault counselor and a victim has been codified since the statute's inception. *See* Act 1990–183 (H.B. 1230), P.L. 737, § 1, approved Dec. 17, 1990, eff. immediately; Act

and section 6381 of the CPSL was later enacted on December 19, 1990.[8] We interpret section 5945.1(b)(1) of the Judicial Code as not in conflict with subsections 6381(a) and (c) of the CPSL; because these provisions of the CPSL are the later-enacted and more specific statutory sections, they must take precedence over section 5945.1(b) of the Judicial Code in the context of expungement proceedings. *See* section 1933 of the SCA, 1 Pa.C.S. § 1933.[9] While section 5945.1(b)(1) of the Judicial Code is applicable "in any court or criminal proceeding," 42 Pa.C.S. § 5945.1(b)(1), in enacting sections 6381(a) and (c) of the CPSL, the legislature created special and specific protection in child abuse proceedings in court and expungement hearings, which would further the interest and protection of the child victim. 23 Pa.C.S. § 6381(a), (c).

PAAR acknowledges this Court's previous interpretation of section 6381(c) of the CPSL in *T.D.*, where a mother sought expunction of an indicated report identifying her as the perpetrator of child abuse for placing her daughter at imminent risk of physical abuse. At the expungement hearing, CYS offered the testimony of a licensed social worker who provided sexual assault counseling to the mother, who had previously been a victim. The mother objected on the ground that allowing the

social worker to testify would contravene section 5945.1(b)(1) of the Judicial Code. The ALJ admitted the testimony of the social worker, albeit while purporting to limit its relevancy.

On appeal to this Court, the mother argued that section 5945.1(b)(1) of the Judicial Code operated as an absolute bar to the social worker's testimony. Citing section 6381(c) of the CPSL, and *B.K. v. Department of Public Welfare*, 36 A.3d 649 (Pa.Cmwlth.2012) (holding that spousal confidential communication privilege of section 5923 of the Judicial Code, 42 Pa. C.S. § 5923, could not be invoked in light of section 6381(c) of the CPSL), this Court disagreed. Instead, we concluded in *T.D.* that the social worker's testimony was admissible per the plain language of section 6381(c) of the CPSL:

> The wording of the statute is clear and consistent with the purpose of the [CPSL] which is to prevent the further abuse of children. Any privileged communication between [the mother] and [the social worker], to the extent that one existed, did not constitute grounds for excluding evidence in the expunction hearing.

*T.D.*, 54 A.3d at 442.

Thus, in *T.D.* this Court held that the rules of evidence of section 6381 of the

---

2000–105 (S.B. 958), P.L. 742, § 4, approved Dec. 20, 2000, eff. in 60 days.

**8.** Act 1990–206 (H.B. 1023), P.L. 1240, § 2, approved Dec. 19, 1990, eff. in 90 days. Section 6381 of the CPSL has been amended once since its enactment up until the proceedings in this case, and this amendment consisted of adding language to subsection (a), particularly the clause "or in any department administrative hearing pursuant to section 6341 (relating to amendment or expunction of information)." *See* Act 1994–151 (H.B. 1001), P.L. 1292, § 7, approved Dec. 16, 1994, eff. July 1, 1995. Subsection (c) to section 6381 of the CPSL has remained the same.

**9.** The rules of statutory construction provide:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S. § 1933.

CPSL govern in any child abuse proceeding in court and department administrative hearing pursuant to section 6341 of the CPSL relating to the amendment or expunction of information.

PAAR asserts that *T.D.* is factually distinguishable because *T.D.* involved the privilege of an alleged perpetrator of child abuse, whereas in this case the privilege of the victim of sexual assault is at stake. However, PAAR's argument fails to recognize that in *T.D.* the mother had been a victim of sexual abuse and was asserting the privilege on this ground.

Moreover, our legislature chose not to engraft such a distinction into section 6381(c) of the CPSL. Indeed, section 6381(c) of the CPSL does not contain any self-limiting language depending on who possesses the privilege. Rather, subsections 6381(a) and 6381(c) of the CPSL unambiguously state, without exception, that the "**privilege of confidential communication between ... counselors ... and their patients or clients shall not constitute grounds for excluding evidence,**" 23 Pa.C.S. § 6381(c) (emphasis added), in expungement hearings. 23 Pa. C.S. § 6381(a). By their very nature and design, these subsections contemplate that a victim's counselor would be called to testify, since expunction proceedings necessarily involve a victim of abuse.

Consequently, we conclude that *T.D.* is indistinguishable and that this case falls squarely within *T.D.*'s holding that section 6381(c) of the CPSL permits the admission of testimony that would otherwise be inadmissible by virtue of the privilege codified in section 5945.1(b)(1) of the Judicial Code. Therefore, in accordance with *T.D.*, we conclude that the ALJ did not err or abuse his discretion in failing to quash the subpoena and ordering V.W. to testify.

We note that PAAR also advances policy-based arguments pertaining to the purported purpose and intent of the privilege in section 5945.1(b)(1) of the Judicial Code, expressing concern that the privilege will eventually be rendered meaningless, and proposing that, notwithstanding section 6381(c) of the CPSL, section 5945.1(b)(1) of the Judicial Code can be preserved to protect the privacy rights of victims of sexual abuse. However, these arguments run afoul of the legislature's clear intent to prevent the exclusion of evidence of child abuse in an expungement proceeding, which evidence, if excluded, might result in further abuse of the child. Clearly, the legislature considered this potential result when it enacted section 6381 of the CPSL and its accompanying rules of evidence.

While both PAAR and DPW state that their primary concern is protecting the child, this concern is disregarded by the exclusion of a sexual assault counselor's testimony regarding child abuse that could result in the expungement of a record and, consequently, allow a perpetrator an opportunity to further abuse a child.

Ultimately, it is the legislature which is in a position to assess, as a matter of social policy, the pros and cons of limiting the use of statutory testimonial privileges in expunction hearings. *See Naylor v. Township of Hellam*, 565 Pa. 397, 773 A.2d 770, 777 (2001) (recognizing the legislature's superior ability to examine social policy issues and determine legal standards so as to balance competing concerns). *See also Commonwealth v. Spetzer*, 572 Pa. 17, 813 A.2d 707, 724 (2002) (Nigro, J., concurring) (advocating that in enacting section 6381(c) of the CPSL, "the legislature made a public policy decision to override" certain testimonial privileges in proceedings involving allegations of child abuse). We nevertheless note that "the sexual abuse of a child obviously is a gravely serious offense," *Spetzer*, 813 A.2d at 722, and that section 6381(c) of the CPSL, by permitting sexual

assault counselors to testify (over a claim of privilege) to statements of abuse conveyed by a victim, promotes the salutary goal of preventing future abuse.

## Conclusion

For the above-stated reasons, we conclude that the ALJ's order qualifies as an appealable collateral order, and further, that the legislature clearly stated that the purpose in the CPSL is to "encourage more complete reporting of suspected child abuse" and to provide "protection for children from further abuse." Section 6302(b) of the CPSL, 23 Pa.C.S. § 6302(b). *See P.R. v. Department of Public Welfare*, 569 Pa. 123, 801 A.2d 478, 483 (2002) (discussing the underlying purpose of the CPSL and stating that "[t]he need to prevent child abuse and to protect abused children from further injury is critical."). In furtherance of this policy objective, the plain language of section 6381(c) of the CPSL, and our precedent in *T.D.*, we conclude that the ALJ did not err in relying on the same in determining that V.W.'s testimony was admissible in the expungement proceeding and section 5954.1(b) of the Judicial Code was not a legal basis for exclusion.

Accordingly, we affirm.

## *ORDER*

AND NOW, this 14th day of July, 2015, the May 27, 2014 order of the administrative law judge of the Department of Public Welfare, Bureau of Hearings and Appeals, is affirmed.