IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caroline S. Robboy and    :
Peter A. Gearhart     :
            :
    v.     : No. 838 C.D. 2024
          : Argued: June 3, 2025
Two Independence Place   :
Condominium Owners'    :
Association,       :
            :
      Appellant :


BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE MICHAEL H. WOJCIK, Judge (P.)
     HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK        FILED: July 29, 2025


   Two Independence Place Condominium Owners' Association (Association) appeals from the June 7, 2024 order of the Court of Common Pleas of Philadelphia County (trial court) granting Caroline S. Robboy's and Peter A. Gearhart's (Owners) motion for summary judgment to convert the trial court's earlier grant of a preliminary injunction against the Association into a permanent injunction. The injunction precluded the Association from enforcing its resolution that granted the Association the right to review and approve or reject the proposed use of any Commercial Unit in Two Independence Place (Resolution). On appeal, the Association argues, *inter alia*, that the trial court erred by construing its

Resolution to violate the Pennsylvania Uniform Condominium Act (Act)[1] and the Declaration of Two Independence Place Condominium (Declaration). Upon careful review, we affirm the trial court's order granting Owners' motion for summary judgment.

## I. Background

Since 2006, Owners have owned a Commercial Unit in Two Independence Place located at 233 S. 6th Street, Philadelphia (Property). Shortly before the commencement of this litigation, Owners attempted to sell their unit. To that end, Owners negotiated to sell their unit to a nursery school. At the nursery school's request, Owners' real estate agent contacted the Association to determine the precise process required for the sale. Throughout a number of conversations on March 9 and 10, 2023, the Association's manager related that Owners "would have to apply for approval of the sale with the [Association's Board of Directors] and that it would likely not approve a sale of the unit that resulted in 'a bunch of screaming kids running around.'" Trial Court Opinion, 6/11/24, at 2.

Then, on March 13, 2023, the Association's Board of Directors passed the Resolution. The Resolution provides: "RESOLVED, that the Board shall exercise its authority to review and approve any proposed use of any Commercial Unit (as must be disclosed in writing by the Unit Owner), by implementing and utilizing any reasonable process that the Board may determine to ensure compliance with [the Act and Declaration]." *See* Reproduced Record (R.R.) at 120a.[2]

---

[1] 68 Pa. C.S. §§3101-3414.

[2] We note that the plain language of the Resolution does not appear to grant the Association the power to prevent a sale. The parties have proceeded as if it does, likely because the Resolution **(Footnote continued on next page…)**

2

Upon learning of the Resolution, Owners filed a petition in the trial court seeking to enjoin the Association from enforcing the Resolution. Although the trial court initially denied the petition, on June 16, 2023, the trial court granted Owners' motion for reconsideration upon learning that the Association had filed a *lis pendens* against Owners' unit. The trial court ultimately granted Owners' Petition by order dated August 29, 2023. Subsequently, on March 13, 2024, Owners filed a motion for summary judgment seeking to convert the preliminary injunction against the Association into a permanent injunction.

By opinion and order dated June 7, 2024, but docketed on June 11, 2024, the trial court granted Owners' motion for summary judgment.[3] In primary part, the trial court concluded that Owners possessed a clear right to relief for a permanent injunction because the Act makes clear that in a conflict between the Declaration and the Bylaws the Declaration must prevail. Trial Court Opinion at 5-6 (citing 68 Pa. C.S. §3203 ("In the event of a conflict between the provisions of the declaration and the bylaws, the declaration prevails . . . .")). Relying on Section 3205(9) of the Act, 68 Pa. C.S. §3205(9), the trial court observed that the Declaration must contain "[a]ny restrictions created by the declarant on use, occupancy, and alienation of the units." Trial Court Opinion at 4.

---

would prevent a putative buyer from purchasing a Commercial Unit without an approved use. *See* Appellees' Supplemental Reproduced Record at 1b-2b. Presumably, however, under the Resolution's plain terms, the Board of Directors may even be able to prevent current Commercial Unit Owners from altering their use of the Property.

[3] As a consequence, this Court granted Owners' application in the nature of a motion to dismiss for mootness and dismissed the Association's appeal of the preliminary injunction. *See Robboy v. Two Independence Place Condominium Owners' Association* (Pa. Cmwlth., No. 77 C.D. 2024, filed January 31, 2025), slip op. at 7-9.

3

Because Section 7.01(1) of the Declaration provides that a Commercial Unit "may be used for retail business, commercial and professional purposes and any other lawful purposes[,]" the trial court concluded that the Resolution conflicted with the Declaration by further restricting an owner's use of their unit beyond that of any lawful purpose. Trial Court Opinion at 5. Although the trial court acknowledged the Declaration may be amended to further restrict a unit's use with the unanimous consent of the unit owners, relying on Sections 3205(9) and 3219(d) of the Act, 68 Pa. C.S. §§3205(9), 3219(d), no such vote occurred, "[l]et alone a unanimous one." *Id*.

Concerning the remaining elements necessary to grant a permanent injunction, the trial court had no difficulty concluding that Owners would suffer an injury that could not be compensated for by damages but for a permanent injunction against the Association. Similarly, the trial court reasoned that if it refused Owners' request it "would unfairly truncate their property rights, [while] granting it would only require [the Association] to follow the rules laid out by the Act, Declaration, and Bylaws to which it is already required to adhere." Trial Court Opinion at 7.

The trial court, therefore, ordered the following injunctive relief:

1. [The Association] is **PERMANENTLY ENJOINED** from enforcing the March 13, 2023 Resolution;

2. [The Association] is **PERMANENTLY ENJOINED** from relying on Board Resolutions 8 and 16 as authority to limit the use of [Owners'] property to anything other than those uses provided for in the Declaration;

3. [The Association] is **PERMANENTLY ENJOINED** from limiting the use of [Owners'] property to less than all lawful purposes absent an amendment to the Declaration approved by unanimous vote of the condominium unit owners;

4

4. Pursuant to [Section 3412 of the Act, 68 Pa. C.S. §3412, Owners] are entitled to reasonable attorney's fees and costs in connection with this matter. . . .

5. The *lis pendens* filed by [the Association] is hereby **STRICKEN and REMOVED** from the record; and

6. The Court retains jurisdiction for the purpose of resolving any future disputes concerning any attempt by [Owners] to exercise control or approval of the sale or use of [Owners'] property.

Trial Court Opinion at 1-2 (emphasis in original). The Association's timely appeal followed.[4]

## II. Issues

The Association presents six separate issues in its statement of the questions presented, which we have distilled into two issues for review. *See* Appellant's Brief at 3-4. First, the Association asserts that the trial court erred by concluding that Owners possess a clear right to relief. Second, the Association

---

[4] We have previously explained:

[W]e will only disturb a trial court's order granting summary judgment where there has been an error of law or a clear abuse of discretion. Summary judgment is properly granted when, viewing the record in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Metropolitan Edison Company v. Reading Area Water Authority*, 937 A.2d 1173, 1174 n.2 (Pa. Cmwlth. 2007) (citations omitted). Further, our Supreme Court has explained that "when reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *Buffalo Township v. Jones*, 813 A.2d 659, 663-64 (Pa. 2003).

maintains that the trial court erred by concluding its permanent injunction was necessary to prevent an injury which could not be compensated for by damages.

## III. Discussion

Preliminarily, a permanent injunction should be granted when the plaintiff establishes "a clear right to relief, that there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and that greater injury will result from refusing rather than granting the relief requested." *Big Bass Lake Community Association v. Warren*, 950 A.2d 1137, 1144 n.8 (Pa. Cmwlth. 2008). "However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Buffalo Township v. Jones*, 813 A.2d 659, 663 (Pa. 2003) (citation and quotation omitted).

### A. Clear Right to Relief
#### 1. Sections 3205(9)and 3219 of the Act

First, the Association argues that the trial court's reliance on Sections 3205(9) and 3219 of the Act, 68 Pa. C.S. §§3205(9) and 3219 (enumerating circumstances requiring unanimous consent to amend a declaration), evinces its misunderstanding of the Association's authority, because the clear terms of those provisions only bind the *declarants*, not the Association or its Board. Appellant's Brief at 32. The Association believes that the Act's definitions of "declaration" and

6

"association" make this clear. *Id*. at 34-36 (citing 68 Pa. C.S. §3101).[5] As such, the Association posits, the trial court erred by concluding that Owners possessed a clear right to relief because Section 3205(9) does not mandate that the Declaration must include any restriction on Owners' use of their unit if the restriction is created by *the Association*.

Owners counter that the Association cannot eliminate or otherwise restrict the use of any unit within Two Independence Place through the Association's rulemaking power. Rather, any restriction on a unit owner's use of their property can only be accomplished through amendment of the Declaration, which requires the unanimous consent of all unit owners. Appellees' Brief at 7, 11. In support, Owners rely on Section 3219(d) of the Act, 68 Pa. C.S. 3219(d) (an amendment to a condominium's declaration which "increase[s] . . . the uses to which any unit is restricted" requires the unanimous consent of the unit owners), Article 14 of the Declaration, §14.03(1) (same), and Article XI of the Bylaws, §11.01(4) (same concerning any amendment to the Bylaws). Appellees' Brief at 11 (also citing *QRK, LLC v. Kenilworth Court Residents Association, Inc.* (Pa. Cmwlth., No. 592 C.D. 2016, filed April 19, 2017), slip op. at 11 n.8 (analyzing Section 5219 of the Uniform Planned Community Act, 68 Pa. C.S. §5219, which is identical to Section 3219(d) of the Act)). To the extent Owners discuss the applicability of Section 3205(9), Owners characterize the Association's arguments as "distanc[ing] itself from the requirements imposed by [Section] 3205(9) of the Act." Appellees' Brief at 24.

---

[5] The Association also cites a litany of cases for their persuasive value which purport to discuss a planned community or condominium's broad rulemaking authority. *See* Appellant's Brief at 34-36. However, these cases primarily relate to the effect of incorporating documents and do not squarely address the present issues in this case.

Section 3205(9) of the Act provides: "The declaration for a condominium must contain: . . . (9) Any restrictions **created by the declarant** on use, occupancy, and alienation of the units." 68 Pa. C.S. §3205(9) (emphasis added). The Act separately defines the terms "declarant" and "association." Per Section 3103 of the Act:

> (1) If the Condominium has been created, "declarant" means:
>
>> (i) any person who has executed a declaration, or an amendment to a declaration to add additional real estate, other than persons holding interest in the real estate solely as security for an obligation, person whose interest in the real estate will not be conveyed to unit owners, or, in the case of a leasehold condominium, a lessor who possesses no special declarant rights and who is not an affiliate of a declarant who possesses special declarant rights; or
>>
>> (ii) any person who succeeds under [S]ection 3304 (relating to transfer of special declarant right to any special declarant rights).
>
> (2) If the condominium has not yet been created, "declarant" means any person who offers to dispose of or disposes of his interest in a unit to be created and not previously disposed of.
>
> (3) If a declaration is executed by a trustee of a land trust, "declarant" means the beneficiary of the trust.

*Id*. §3103. The same section defines "association" or "unit owners' association" as "[t]he unit owners' association organized under [S]ection 3301[6] (relating to

---

[6] Section 3301 of the Act provides:

**(Footnote continued on next page…)**

8

organization of all unit owners' association)." *Id*. The "Executive Board" is "[t]he body, regardless of name, designated in the declaration to act on behalf of the association." *Id*.

Here, the Resolution is a restriction on use created by the Association's Board of Directors (their Executive Board), *see* Article 7 of the Declaration, not the declarant.[7] Thus, by its plain terms, Section 3205(9) does not apply here and this provision of the Act cannot serve as a trigger requiring the Declaration to be amended by the unanimous consent of all Unit Owners. Nevertheless, as discussed below, we still believe that Owners remain entitled to relief on other grounds. *Rabenold v. Zoning Hearing Board of the Borough of Palmerton*, 777 A.2d 1257, 1263 (Pa. Cmwlth. 2001) (Where the result is clear and the basis for affirming is clear from the record, we may affirm a trial court on other grounds.).

### 2. Incorporation of the Bylaws

Next, the Association argues that "there is no meaningful distinction between the Declaration and the [] Bylaws as to the obligation of the Board to

---

A unit owners' association shall be organized no later than the date the first unit of the condominium is conveyed to a person other than a successor declarant. The membership of the association at all times shall consist exclusively of all the unit owners or, following termination of the condominium, of all former unit owners entitled to distributions of proceeds under [S]ection 3220 (relating to termination of condominium) or their heirs, successors or assigns. The association shall be organized as a profit or nonprofit corporation or as an unincorporated association.

68 Pa. C.S. §3301.

[7] As is typical for a condominium, the declarant in this case was the developer, Independence Place Associates. *See* R.R. at 47a.

regulate use" because Section 4.05 of the Declaration "fully" incorporates Article V,

Section 5.01(3) of the Bylaws by reference. Appellant's Brief at 28-29. The

Declaration provides in pertinent part:

> The Association shall be an unincorporated association consisting of all of the Unit Owners acting as a group in accordance with the Act pursuant to this Declaration and the Bylaws. For all purposes the Association shall act merely as an agent for the Unit Owners as a group. The Association shall have the responsibility of administering the Condominium . . . and performing all other acts that may be required or permitted to be performed by the Association by the [] Act, this Declaration and the Bylaws. Except as to those matters which the [] Act specifically requires to be performed by the vote of the Association, the foregoing responsibility shall be performed by the Board of Directors or Managing Agent **as more particularly set forth in Article V of the Bylaws**.

*See* R.R. at 49a (emphasis added). In turn, Article V of the Bylaws, Section 5.01(3)

provides:

> 5.01 Enumeration. The Board of Directors shall have all of the powers and duties necessary for the administration of the affairs of the Association and may do all such acts and things that are not by the [A]ct, the Declaration, or by these Bylaws required to be exercised and done by the Association. Such powers and duties of the Board of Directors include, but are not limited to, the following:
>
> * * *
>
> > (3) To adopt community rules and regulations (and provide written notice thereof to all Unit Owners) governing the administration, management, operation and use of the Property and the Common Elements and to amend the community rules and regulations from time to time . . . ."

10

R.R. at 103a-04a.  Taken together, the Association contends that it "has the express power to regulate the uses of all of the units."[8]  Appellant's Brief at 30.

The Association argues that the trial court erred by concluding that the Bylaws conflicted with the Declaration and violated Section 3203(c) of the Act, 68 Pa. C.S. §3203(c) ("In the event of a conflict between the provisions of the declaration and the bylaws, the declaration prevails except to the extent the declaration is inconsistent with this subpart.").  Appellant's Brief at 38.  Properly understood, the Declaration's incorporation of the Bylaws means that this is not a conflict between the Declaration and the Bylaws, but a "conflict between two provisions of a single Declaration."  Appellant's Reply Brief at 3-4 (emphasis removed); *see also* Appellant's Brief at 43.  As such, the Association argues that the trial court's understanding of Article 7.01 of the Declaration as supreme disrupts the Declaration's harmony by rendering Article 4.05 of the Declaration (incorporating the Bylaws) a nullity.  Appellant's Brief at 43.  Instead, the Association would have us read the Declaration to permit its Resolution, the Bylaws, and the Declaration to operate in tandem to enable the Association to regulate the use of Owners' Unit.  *Id*.

Owners respond that an association's rulemaking power is limited to a condominium's common elements rather than a specific unit's use.  Appellees' Brief at 18-19 (citing 68 Pa. C.S. §3302(6)).  Owners argue that the Resolution goes beyond that of "regulating" the use of the units to "changing" the use of the units, which can only be accomplished by the unanimous consent of the declarants.  *Id*. at

---

[8] The Association also notes that it has twice regulated the use of all units pursuant to this authority.  In 1991, the Association promulgated Resolutions 8 and 16, which respectively established the Commercial Use Regulations Committee and formalized certain rules and regulations for commercial units such as trash removal.  Appellant's Brief at 30-31.  Resolutions 8 and 16 also seek to empower the Board of Directors to adopt rules that would protect the "health, safety, and welfare" of the residents and ensure "peaceful possession" of their units.  *See* R.R. at 111-19a.

11

12, 19 (citing *Belleville v. David Cutler Group*, 118 A.3d 1184, 1194 (Pa. Cmwlth. 2015)). Throughout their brief, Owners maintain that Article 7, Section 7.02 of the Declaration is paramount concerning the use of Commercial Units. *Id. passim*. Owners therefore disagree with the notion that any harmony can exist if we permit the Association to regulate the use of the units by way of the incorporated Bylaws. *Id.* at 14-15.

The Bylaws are subject to the same rules of interpretation as statutes, contracts, and other written instruments. *Purcell v. Milton Hershey School Alumni Association*, 884 A.2d 372, 379 n.10 (Pa. Cmwlth. 2005). We also find this principle applicable to the Declaration and its incorporated provisions. "While we may not ignore unambiguous language under the pretext of pursuing the spirit of that statute, we must always read the words of a statute in context, not in isolation, and give meaning to each and every provision." *Gavin v. Loeffelbein*, 205 A.3d 1209, 1221 (Pa. 2019). Each provision of the Declaration, then, "shall be construed, if possible, to give effect to all its provisions 'so that no provision is mere surplusage.'" *Dietrich v. Department of Agriculture*, 329 A.3d 735, 742 (Pa. Cmwlth. 2024) (quoting *Honey v. Lycoming County Offices of Voter Services*, 312 A.3d 942, 948 (Pa. Cmwlth. 2024) (citing 1 Pa. C.S. §1921(a)). Further, "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed if possible, so that effect may be given to both." *Pittsburgh Action Against Rape v. Department of Public Welfare*, 120 A.3d 1078, 1085 n.9 (Pa. Cmwlth. 2015) (quoting 1 Pa. C.S. §1933).

To the extent that the Resolution, as an expression of the Board of Directors' power under the Declaration and Bylaws, conflicts with the Commercial Unit Owners' right to use their property for any lawful purpose, this conflict is easily

12

reconciled. As indicated, Article 7 of the Declaration, Section 7.01, *enacted pursuant to the Act*, permits Commercial Unit Owners to use their unit in conformity with "any [] lawful purpose." The incorporated Bylaw at issue confers the authority upon the Board of Directors to "adopt community rules and regulations that . . . govern the use of the Property and the Common Elements." R.R. at 104a. However, this very same article also provides: "5.03 Limitation. Nothing in this Article or elsewhere in these Bylaws shall be considered to grant to the Board of Directors or to the officers of the Association any powers or duties which, by law, are possessed by Unit Owners." *Id*. at 105a.

In other words, because the Declaration was enacted pursuant to the Act, the Commercial Unit Owners possess the right to use their Commercial Unit for any lawful purpose by law, such that Article V, Section 5.03 of the Bylaws expressly prevents the Board of Directors from infringing upon this right by way of the Resolution.

Ultimately, although Section 3205(9) does not confer a clear right to relief upon Owners, the Declaration and the Bylaws do and this Court's interpretation thereof ensures that Article 7, Section 7.01 of the Declaration, establishing the permitted uses for Commercial Units as "any lawful use," is given full force, while also giving effect to Article V, Sections 5.01(3) and 5.03.[9]

To the extent that the trial court resolved this matter by relying on Section 3205(9) of the Act, the trial court erred. However, because we have determined that Article 7, Section 7.01 of the Declaration is controlling, the only means of restricting a Commercial Unit Owner's use is by amending the Declaration. Thus, the trial court correctly concluded that Section 3219(d) of the Act must govern

_____

[9] This interpretation is likewise consistent with the communal character of Resolutions 8 and 16.

any amendment. *See* 68 Pa. C.S. §3219(d)(1) ("Except to the extent expressly permitted or required by other provisions of this subpart, **no amendment may create or increase** . . . **the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners**.") (emphasis added). The trial court's order, then, is narrowly tailored to abate the injury at issue, and we have no cause to modify its order. *See Big Bass Lake*, 950 A.2d at 1145-46 (citing *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167 (Pa. 1977)).

### *B. Injury*

Next, the Association believes that the trial court erred in concluding that a permanent injunction is necessary to prevent an injury which could not be compensated for by damages, because, at all events, the threat of injury has been purely speculative. "[I]t is undisputed that [Owners] never sought the Association's consent for any sale, and the Association never denied its consent to any proposed sale. Moreover, [Owners] never even had an agreement of sale – everything is completely speculative!" Appellant's Brief at 44. The Association argues that its Resolution, by itself, did nothing to divest Owners of any property rights, nor did it harm any prospect of sale. Thus, any injury to the Owners is too remote to warrant injunctive relief. *Id*. at 45 (citing *Firearm Owners Against Crime v. Lower Merion Township*, 151 A.2d 1172, 1184 (Pa. Cmwlth. 2016)).[10] Finally, the Association believes that no property right has been invaded at all, because the Association "only issued a resolution stating that it would review proposed uses." *Id*. at 46.

---

[10] In light of this argument, the Association also argues that Appellees are not sufficiently aggrieved as to possess standing to challenge the Resolution. Appellant's Brief at 44. However, this argument is readily disposed of by the same analysis concerning injury.

14

Owners respond that the Association's arguments concerning injury miss the point. The encumbered sale of their unit, real or imagined, is not the injury that Owners have suffered. Rather, the injury has already occurred because the Resolution has substantially interfered with their property rights to use their unit in conformity with any lawful use as permitted by the Declaration when they initially bought the property. Appellees' Brief at 22-23 (citing *Peters v. Davis*, 231 A.2d 748, 752 (Pa. 1967)).

On this point, we agree with Owners that the harm that the Resolution inflicts upon Owners does not relate to any purported sale, but to the change in the nature of their ownership of their Commercial Unit. Not only does this change hinder the future conveyance of the Commercial Unit, but it also operates to require the approval of any change in use that Owners would like to undertake while retaining ownership over the Commercial Unit. Thus, the Resolution goes far beyond that of a mere review.

As our Supreme Court and this Court have previously held, interference with ownership or possessory uses of property constitutes either irreparable harm or a harm which cannot be compensated for by damages. *See New Eastwick Corp. v. Philadelphia Builders Eastwick Corp.*, 241 A.2d 776 (Pa. 1968) ("In light of the unique and intrinsic value of land, interference with the plaintiff's rights to contractual ownership of that land must be deemed irreparable harm."); *see also Big Bass Lake*, 950 A.2d at 1145 (An injunction is appropriate to restrain interference with an easement.); *Berwick Township v. O'Brien*, 148 A.3d 827, 891 (Pa. Cmwlth. 2016) (same). We therefore conclude that the Association's Resolution likewise constitutes harm which cannot be compensated for by damages because it interferes with the use of Appellees' property.

## IV. Conclusion

Accordingly, the order of the trial court is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Covey did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caroline S. Robboy and         :
Peter A. Gearhart             :
                               :
        v.            : No. 838 C.D. 2024
                               :
Two Independence Place      :
Condominium Owners'       :
Association,               :
                               :
          Appellant   :

## O R D E R

AND NOW, this 29th day of July, 2025, the June 7, 2024 order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge